BEASON v. I. E. MILLER SERVICES, INC.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:BEASON v. I. E. MILLER SERVICES, INC.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 BEASON v. I. E. MILLER SERVICES, INC.
2019 OK 28
Case Number: 114301
Decided: 04/23/2019
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2019 OK 28, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

JAMES TODD BEASON and DARA BEASON, Plaintiffs/Appellants/Counter-Appellees,
v.
I. E. MILLER SERVICES, INC., Defendant/Appellee/Counter-Appellant.

APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY 

¶0 Plaintiffs brought a personal-injury action, and a jury returned a verdict in their favor. The Honorable Patricia Parrish, District Judge, reduced the amount of the actual noneconomic damages awarded by the jury to comply with the statutory cap on damages contained in 23 O.S. 2011 § 61.2, and then entered judgment on the verdict as modified. Plaintiffs appealed, challenging the statutory cap on damages, as well as other matters. Defendant filed a counter-appeal, also attacking the judgment on various grounds. A motion to retain the appeal in this Court was granted. We hold that 23 O.S. 2011 § 61.2(B)--(F) is an impermissible special law that violates Article 5, Section 46 of the Oklahoma Constitution because it singles out for different treatment less than the entire class of similarly situated persons who may sue to recover for bodily injury. We further hold that none of the defendant's assignments of error in its counter-appeal is sufficient to reverse the judgment.

JUDGMENT OF THE DISTRICT COURT REVERSED IN PART;
CAUSE REMANDED WITH DIRECTIONS TO ENTER JUDGMENT
ON THE JURY'S VERDICT

Ed Abel, Lynn B. Mares, Kelly S. Bishop, and T. Luke Abel, Abel Law Firm, Oklahoma City, Oklahoma, and Valerie M. Nannery, pro hac vice, and Robert S. Peck, pro hac vice, Center for Constitutional Litigation, P.C., Washington, D.C., for James Todd Beason and Dara Beason, Plaintiffs/Appellants/Counter-Appellees.

Robert Todd Goolsby, Perry E. Kaufman, and Megan C. Lee, Goolsby, Proctor, Heefner and Gibbs, P.C., Oklahoma City, Oklahoma, for I. E. Miller Services, Inc., Defendant/Appellee/Cross-Appellant.

Mithun Mansinghani, Solicitor General, and Sarah A. Greenwalt, Assistant Solicitor General, Office of the Oklahoma Attorney General, Oklahoma City, Oklahoma, for the State of Oklahoma.

Amy Sherry Fischer, Foliart Huff Ottaway & Bottom, Oklahoma City, Oklahoma, and Mark Alan Behrens, pro hac vice, Shook, Hardy & Bacon L.L.P., Washington, D.C., for Amici Curiae, American Tort Reform Association, NFIB Small Business Legal Center, and Coalition for Litigation Justice, Inc.

Rex Travis and Paul Kouri, Travis Law Office, Oklahoma City, Oklahoma, and Simone Gosnell Fulmer, Fulmer Group PLLC, Oklahoma City, Oklahoma, for Amicus Curiae, Oklahoma Association for Justice.

Erin A. Renegar and Carline J. Lewis, Wiggins, Sewell & Ogletree, Oklahoma City, Oklahoma, for Amicus Curiae, Oklahoma Association of Defense Counsel.

V. Glenn Coffee and Denise K. Lawson, Glenn Coffee & Associates, PLLC, Oklahoma City, Oklahoma, for Amici Curiae, Oklahoma State Chamber of Commerce and Industry, Inc., and Chamber of Commerce of the United States of America.

REIF, J.

¶1 At issue is the constitutionality of a legislative enactment--23 O.S. 2011 § 61.2--that statutorily limits a plaintiff's recovery of noneconomic damages to $350,000 unless special findings are made. In this case, the trial court significantly reduced the jury's award based on its application of 23 O.S. 2011 § 61.2(B)--(F). We conclude that the challenged statutory provision--the cap on actual noneconomic damages--is wrought with an irremediable constitutional infirmity: It is a special law categorically prohibited by Article 5, Section 46 of the Oklahoma Constitution. We hold that 23 O.S. 2011 § 61.2(B)--(F) is unconstitutional in its entirety, and we reverse the trial court's judgment to the extent it modified--and reduced--the jury's verdict in favor of the plaintiffs.

I.

¶2 The facts underlying this controversy may be briefly stated. A boom from a crane fell and hit Todd Beason. The crane was operated by an employee of the defendant, I. E. Miller Services, Inc. The employee was attempting to move an 82,000-pound mud pump without the assistance of another crane or vehicle. As a result of his injury, Beason underwent two amputations on parts of his arm.

¶3 Beason and his wife, Dara Beason, brought an action against the defendant. The matter went to trial in Oklahoma County. The jury awarded $14,000,000 to Todd Beason and $1,000,000 to Dara Beason. The jurors then signed a "supplemental verdict form" allocating $5,000,000 of the $14,000,000 awarded to Todd Beason as actual noneconomic damages. The trial judge determined that all of Dara Beason's damages were noneconomic in nature.

¶4 The full text of 23 O.S. 2011 § 61.2 provides:

A. In any civil action arising from a claimed bodily injury, the amount of compensation which the trier of fact may award a plaintiff for economic loss shall not be subject to any limitation.

B. Except as provided in subsection C of this section, in any civil action arising from a claimed bodily injury, the amount of compensation which a trier of fact may award a plaintiff for noneconomic loss shall not exceed Three Hundred Fifty Thousand Dollars ($350,000.00), regardless of the number of parties against whom the action is brought or the number of actions brought.

C. Notwithstanding subsection B of this section, there shall be no limit on the amount of noneconomic damages which the trier of fact may award the plaintiff in a civil action arising from a claimed bodily injury resulting from negligence if the judge and jury finds, by clear and convincing evidence, that the defendant's acts or failures to act were:

1. In reckless disregard for the rights of others;
2. Grossly negligent;
3. Fraudulent; or
4. Intentional or with malice.

D. In the trial of a civil action arising from claimed bodily injury, if the verdict is for the plaintiff, the court, in a nonjury trial, shall make findings of fact, and the jury, in a trial by jury, shall return a general verdict accompanied by answers to interrogatories, which shall specify all of the following:

1. The total compensatory damages recoverable by the plaintiff;
2. That portion of the total compensatory damages representing the plaintiff's economic loss;
3. That portion of the total compensatory damages representing the plaintiff's noneconomic loss; and
4. If alleged, whether the conduct of the defendant was or amounted to:

a. reckless disregard for the rights of others,
b. gross negligence,
c. fraud, or
d. intentional or malicious conduct.

E. In any civil action to recover damages arising from claimed bodily injury, after the trier of fact makes the findings required by subsection D of this section, the court shall enter judgment in favor of the plaintiff for economic damages in the amount determined pursuant to paragraph 2 of subsection D of this section, and subject to paragraph 4 of subsection D of this section, the court shall enter a judgment in favor of the plaintiff for noneconomic damages. Except as provided in subsection C of this section, in no event shall a judgment for noneconomic damages exceed the maximum recoverable amounts set forth in subsection B of this section. Subsection B of this section shall be applied in a jury trial only after the trier of fact has made its factual findings and determinations as to the amount of the plaintiff's damages.

F. In any civil action arising from claimed bodily injury which is tried to a jury, the jury shall not be instructed with respect to the limit on noneconomic damages set forth in subsection B of this section, nor shall counsel for any party nor any witness inform the jury or potential jurors of such limitations.

G. This section shall not apply to actions brought under The Governmental Tort Claims Act or actions for wrongful death.

H. As used in this section:

1. "Bodily injury" means actual physical injury to the body of a person and sickness or disease resulting therefrom;
2. "Economic damages" means any type of pecuniary harm including, but not limited to:

a. all wages, salaries or other compensation lost as a result of a bodily injury that is the subject of a civil action,
b. all costs incurred for medical care or treatment, rehabilitation services, or other care, treatment, services, products or accommodations as a result of a bodily injury that is the subject of a civil action, or
c. any other costs incurred as a result of a bodily injury that is the subject of a civil action;

3. "Fraudulent" or "fraud" means "actual fraud" as defined pursuant to Section 58 of Title 15 of the Oklahoma Statutes;
4. "Gross negligence" means the want of slight care and diligence;
5. "Malice" involves hatred, spite or ill will, or the doing of a wrongful act intentionally without just cause or excuse;
6. "Noneconomic damages" means nonpecuniary harm that arises from a bodily injury that is the subject of a civil action, including damages for pain and suffering, loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, education, disfigurement, mental anguish and any other intangible loss; and
7. "Reckless disregard of another's rights" shall have the same meaning as willful and wanton conduct and shall mean that the defendant was either aware, or did not care, that there was a substantial and unnecessary risk that his, her or its conduct would cause serious injury to others. In order for the conduct to be in reckless disregard of another's rights, it must have been unreasonable under the circumstances and there must have been a high probability that the conduct would cause serious harm to another person.

I. This section shall apply to civil actions filed on or after November 1, 2011.

Applying the provisions of 23 O.S. 2011 § 61.2(B)--(F), the district court reduced the verdict to $9,700,000. That is, the jury's total award of $6,000,000 in noneconomic damages to the Beasons was lowered to $700,000 (or $350,000 per person) in accordance with the statute's cap on damages.

¶5 The Beasons filed a motion to conform the judgment to the jury's verdict and the evidence, and reiterated their pretrial argument that 23 O.S. 2011 § 61.2 was unconstitutional. The trial court denied the Beasons' motion, rejecting their constitutional challenge to the statute. The Beasons timely appealed the judgment, arguing that 23 O.S. 2011 § 61.2 is unconstitutional because--in the main--the statute is a special law in violation of Article 5, Section 46 of the Oklahoma Constitution.[1] The defendant also brought a counter-appeal from the judgment, asserting various trial errors. We retained the appeal.

II.

A.

¶6 Article 5, Section 46 of the Oklahoma Constitution provides that the Legislature shall not pass special laws affecting certain subjects. It enacts a "mandatory prohibition against special laws." Zeier v. Zimmer, Inc., 2006 OK 98, ¶ 7, 152 P.3d 861, 865. A statute is a special law when part of an entire class of similarly affected persons is segregated and targeted for different treatment. Reynolds v. Porter, 1988 OK 88, ¶ 14, 760 P.2d 816, 822. To be sure, "the Legislature has a wide latitude to create statutory classifications, but they must be reasonable." Ponca Iron & Metal, Inc. v. Wilkinson, 2010 OK 75, ¶ 6, 242 P.3d 534, 536; see also Loyal Order of Moose, Lodge 1785 v. Cavaness, 1977 OK 70, ¶ 16, 563 P.2d 143, 147 (statutory classifications must "above all be reasonable"). "The Legislature runs afoul of the prohibition on enacting special laws set forth in Oklahoma Const. Art. 5 § 46 when it adopts a classification that is arbitrary and capricious and bears no reasonable relationship to the object of the Legislation." Ponca Iron & Metal, 2010 OK 75, ¶ 6, 242 P.3d at 536. Stated another way, Article 5, Section 46 requires uniformity of treatment when like-situated litigants arrive at the courthouse door: "[C]ourt procedure [must] be symmetrical and apply equally across the board for an entire class of similarly situated persons or things." Zeier, 2006 OK 98, ¶ 13, 152 P.3d at 868; see also State ex rel. Macy v. Bd. of Cty. Comm'rs of Cty. of Oklahoma, 1999 OK 53, ¶ 14, 986 P.2d 1130, 1138; Tate v. Browning--Ferris, Inc., 1992 OK 72, ¶ 18, 833 P.2d 1218, 1229--30.

¶7 Here, the statutory cap on noneconomic damages resulting from bodily injury--contained in 23 O.S. 2011 § 61.2(B)--(F)--is the type of special law that is forbidden by Article 5, Section 46 of the Oklahoma Constitution. It is a special law because it targets for different treatment less than the entire class of similarly situated persons who sue to recover for bodily injury.[2] Ponca Iron & Metal, 2010 OK 75, ¶ 6, 242 P.3d at 536; see also Zeier, 2006 OK 98, ¶ 13, 152 P.3d at 867 ("In a special laws attack under art. 5, § 46, the only issue to be resolved is whether a statute upon a subject enumerated in the constitutional provision targets for different treatment less than an entire class of similarly situated persons or things."). "The shortcoming of a special law is that it does not embrace all the classes that it should naturally embrace . . . ." Wall v. Marouk, 2013 OK 36, ¶ 5, 302 P.3d 775, 779. The failing of the statute is that it purports to limit recovery for pain and suffering in cases where the plaintiff survives the injury-causing event, while persons who die from the injury-causing event face no such limitation. See Okla. Const. art. 23, § 7 ("The right of action to recover damages for injuries resulting in death shall never be abrogated, and the amount recoverable shall not be subject to any statutory limitation . . . .").

¶8 But these two categories are not just similarly situated: They stand on identical footing with respect to recovery. The personal representative of a person who dies from the injury-causing event can maintain an action to the same extent as if the deceased "might have maintained an action, had he or she lived." 12 O.S. 2011 § 1053(A). Such recovery includes "mental pain and anguish" suffered by the decedent. Id. § 1053(B). As noted, the people of Oklahoma have expressly forbidden "any statutory limitation" on the amount recoverable for damages for injuries resulting in death. Okla. Const. art. 23, § 7. If a decedent can recover without limitation for pain and suffering during the time between the harm-causing event and his or her death, no good reason exists to treat a person who survives the harm-causing event differently with respect to recovery for the very same detriment.

¶9 The fact that the statutory cap can be lifted, if the injured party can show certain degrees of culpability on the part of the harm-causing agent, does not save the statute from its discriminatory effect. The shared experience of everyday life teaches that a collapsing brick wall can inflict bodily injuries on one person that result in death and bodily injuries on another person that do not result in death, and that the resulting pain and suffering in each case can be substantially the same. Pain and suffering do not vary depending upon the source of the collapse and do not care if the source of the collapse is the result of a tornado, an earthquake, a terrorist act, intentional conduct, negligent design, or strict-liability activity. Culpability or lack of culpability has no bearing whatsoever on the extent of the suffering a victim--deceased or surviving--sustains.

¶10 By forbidding limits on recovery for injuries resulting in death, the people have left it to juries to determine the amount of compensation for pain and suffering in such cases, and no good reason exists for the Legislature to provide a different rule for the same detriment simply because the victim survives the harm-causing event. And the people have demonstrated their intent that the Legislature not discriminate in this way by expressly prohibiting the Legislature from enacting special laws. Okla. Const. art. 5, § 46; see also Reynolds, 1988 OK 88, ¶ 21, 760 P.2d at 824 ("Those who participated in the formation of our Constitution expressed in Art. 5, § 46 a strong fear that those with political power would carve out for themselves special exceptions to our general laws."). In addition, the people have commanded that "where a general law can be made applicable, no special law shall be enacted." Okla. Const. art 5, § 59. Again, it should be stressed that the pain and suffering for which a personal representative can recover in a wrongful-death suit is the same detriment for which the decedent would have the right to recover had the decedent lived.

¶11 Unlike the Legislature (which has imposed a discriminatory cap that favors only one party), the people of Oklahoma have shown a clear preference that damages for personal injury be based on an assessment of evidence by a jury in a proceeding where the interested parties have the equal right to be heard on that issue. This process also has the further protection of judicial review that includes new trial, judgment notwithstanding the verdict, additur, remittitur, and--finally--appeal.

¶12 Given the fact that the people have vested the jury with constitutional responsibility to determine the amount of recovery for pain and suffering from an injury resulting in death, this Court must presume a jury would be equally competent to make the same determination in a case where the injury does not result in death. This faith and confidence of the people in the jury system are enshrined within our sacrosanct Bill of Rights, expressed through the command that "[t]he right of trial by jury shall be and remain inviolate." Okla. Const. art. 2, § 19.

¶13 "The manifest intent of our Constitution's framers was that all persons under the same conditions and in the same circumstances be treated alike and that the legislature be prohibited from tampering with limitations by fashioning special acts." Reynolds, 1988 OK 88, ¶ 19, 760 P.2d at 823. If the people of Oklahoma ever believe the jury system and judicial review are no longer effective to balance the competing interests over compensation in private personal-injury cases, then constitutional amendment--not a special law--is the proper way to provide such change. See Okla. Const. art. 2, § 1 ("All political power is inherent in the people; and government is instituted for their protection, security, and benefit, and to promote their general welfare; and they have the right to alter or reform the same whenever the public good may require it . . . .").

¶14 It is noteworthy that the only power the people have given the Legislature to enact statutory limits on the amount recoverable in civil actions is found in Article 23, Section 7 of our Constitution, and is addressed to "civil actions or claims against the state or any of its political subdivisions." Cases of this nature--as well as cases to compensate for death resulting from work-related injuries--involve public-policy interests, like sovereign immunity and the "Grand Bargain" of the workers' compensation system, that are not present in a private-rights dispute like the case at hand.

¶15 In holding that 23 O.S. 2011 § 61.2(B)--(F) is unconstitutional, we take care to emphasize that "[t]his Court does not correct the Legislature, nor do we take upon ourselves the responsibility of legislating by judicial fiat." Zeier, 2006 OK 98, ¶ 31, 152 P.3d at 874. We "recognize[] that a statute is the solemn act of the Legislature." Id. ¶ 12, 152 P.3d at 866. But we are required to apply the Oklahoma Constitution with absolute fidelity. And "a special statute under § 46 is never permissible."[3] Reynolds, 1988 OK 88, ¶ 17, 760 P.2d at 823. As the "independent department of government charged with the responsibility of protecting the constitution," we have the solemn yet urgent duty to act when a "statute is clearly, palpably and plainly inconsistent with the constitution"--as here. Zeier, 2006 OK 98, ¶ 12, 152 P.3d at 866--67. We hold that 23 O.S. 2011 § 61.2(B)--(F) violates Article 5, Section 46 of the Oklahoma Constitution.

B.

¶16 As a final matter, we turn to the defendant's counter-appeal from the trial court's judgment. The defendant argues that (1) 12 O.S. § 3009.1 applies to both past and future medical expenses; (2) the testimony of two witnesses failed to satisfy the requirements of 12 O.S. § 702, and also that their testimony was prejudicial; (3) evidence on the issue of warranties covering costs for future repair of prosthetics should have been allowed; (4) the jury should have been informed whether personal-injury awards for personal damages are subject to state and federal taxation; (5) the statutory cap on damages codified in 23 O.S. 2011 § 61.2 should have been applied "per lawsuit rather than per plaintiff"; (6) the trial court committed error when refusing to allow the jury to consider the negligence of nonparties; and (7) the trial court committed further error by allowing the defendant's investigation report for the plaintiffs' use without allowing the defendant to explain the basis for the conclusions in the report or admit the report in its entirety.

¶17 We find the defendant's seven assignments of error lack merit because (1) 12 O.S. § 3009.1 does not apply to future medical expenses not yet incurred; (2) the asserted errors raised on appeal concerning the testimony of the life-care planner and the plaintiffs' economist do not show abuses of discretion by the trial court; (3) the trial court did not abuse its discretion in failing to instruct the jury on tax liability; (4) the trial court correctly ruled evidence of warranties for medical devices was not proper; (5) any alleged error concerning a cap on actual noneconomic damages applied on a "per lawsuit" basis was not preserved for appeal; (6) the defendant was not entitled to a "ghost tortfeasor" instruction, and the trial court's ruling on the same was not error; and (7) the trial court did not commit reversible error by allowing the defendant's employee to testify concerning his conclusions found in the investigation report, although the witness used the statements of others in forming some of his conclusions.

¶18 We conclude that none of the defendant's assignments of error is sufficient to reverse the judgment of the trial court.

III.

¶19 In conclusion, special acts "create preferences and establish inequality." Reynolds, 1988 OK 88, ¶ 19, 760 P.2d at 823. Because that is precisely what the Legislature has done here, we hold that 23 O.S. 2011 § 61.2(B)--(F) is a special law absolutely proscribed by Article 5, Section 46 of the Oklahoma Constitution. Accordingly, we reverse that part of the trial court's judgment modifying the jury's award of noneconomic damages to the plaintiffs. We remand this cause to the district court with directions to enter judgment in the full amount of the jury's verdict.

JUDGMENT OF THE DISTRICT COURT REVERSED IN PART;
CAUSE REMANDED WITH DIRECTIONS TO ENTER JUDGMENT
ON THE JURY'S VERDICT.

¶20 Darby, V.C.J., Colbert and Reif, JJ., and Goodman, S.J. and Walkley, S.J., concur;

¶21 Gurich, C.J., concurs in part and dissents in part;

¶22 Gurich, C.J., concurring in part and dissenting in part:

I concur in the majority opinion except I conclude that 23 O.S 2011 § 61.2 (B) is constitutional but would sever §61(E) & (F) as unconstitutional.

¶23 Winchester (by separate writing), Edmondson (by separate writing), JJ., and Fischer, S.J., dissent;

¶24 Kauger, J., recused;

¶25 Combs, J., disqualified.

FOOTNOTES

[1] The Beasons raise several other constitutional challenges on appeal. Having determined that 23 O.S. 2011 § 61.2(B)--(F) is unconstitutional as a special law prohibited by Article 5, Section 46 of the Oklahoma Constitution, we find that addressing their additional constitutional arguments is unnecessary for the disposition of this appeal.

[2] Although the precepts of equal protection may echo in Oklahoma's constitutional injunction against enactment of special laws, the doctrines exist independently of each other. Article 5, Section 46 "is not just a mirror of equal protection notions but rather an absolute and unequivocal prohibition against applying statutory limitations to less than an entire class of like-situated litigants." Reynolds v. Porter, 1988 OK 88, ¶ 21, 760 P.2d 816, 824.

[3] Our state constitution is a "unique document." Wall v. Marouk, 2013 OK 36, ¶ 4, 302 P.3d 775, 779. "Some of its provisions"--including Article 5, Section 46--"are unlike those in the constitutions of any other state, and some are more detailed and restrictive than those of other states." Id. We also note--and not for the first time--that Oklahoma's "prohibition against special laws is not new." Id. ¶ 7, 302 P.3d at 779. "Even before statehood and the adoption of the Oklahoma Constitution, special laws were not permissible." Id. (citing Guthrie Daily Leader v. Cameron, 1895 OK 71, 41 P. 635); see also Chickasha Cotton Oil Co. v. Lamb & Tyner, 1911 OK 68, ¶ 0, 114 P. 333, 333 (early post-statehood decision interpreting Article 5, Section 46 as prohibiting "the enactment of special or local laws"). The people's distaste for the discrimination and favoritism of special laws was given lasting force through the 1907 Constitution and retains its vitality today.

 

WINCHESTER, J., dissenting:

¶1 I respectfully dissent. It is important to point out what 23 O.S.2011, § 61.2 does not do: (1) it does not cap damages in cases of wrongful death; (2) it does not cap economic damages for lost wages; (3) it does not cap economic damages for medical expenses; and (4) it does not bar the first $350,000 of non-economic damages, such as pain and suffering. With the passage of § 61.2, the Legislature determined that, due to the subjective nature of a recovery for pain and suffering, such damages should be capped at $350,000 in ALL "civil action[s] arising from a claimed bodily injury." 23 O.S.2011, § 61.2. Significantly, this cap can be lifted where a plaintiff shows, by clear and convincing evidence, that the defendant acted in reckless disregard for the rights of others, was grossly negligent, acted fraudulently, or acted with intent or malice. 23 O.S.2011, § 61.2(C). In these scenarios, there is no cap.

¶2 The majority finds that there should be no cap for pain and suffering and that the Legislature has created an impermissible, special law. This ruling is contrary to other legislative acts which incorporate caps, such as the Worker's Compensation Act and the Governmental Tort Claims Act. I believe the Legislature acted within its rights in creating this valid cap on non-economic damages.

¶3 The majority further fails to narrowly tailor its ruling and, instead, broadly rules that § 61.2 is invalid in its entirety. I specifically disagree that § 61.2 is an unconstitutional, special law. As this Court has stated on numerous occasions, a special law is one that relates to particular persons or things of a class, in contrast with a general law which applies to ALL persons or things of a class. See, e.g., City of Enid v. Public Employees Relations Board, 2006 OK 16, ¶15, 133 P.3d 281 (A general law "relates to persons or things as a class rather than relating to particular persons or things.") citing Grant v. Goodyear Tire & Rubber Co., 2000 OK 41, ¶5, 5 P.3d 594, 597, and Reynolds v. Porter, 1988 OK 88, ¶14, 760 P.2d 816, 822. A law can be general and still have a local application or apply to a designated class so long as it operates equally upon all subjects within the class for which it was adopted. Burks v. Walker, 1909 OK 317, ¶23, 109 P. 544, 549. Applying this reasoning, § 61.2 is a general law.

¶4 Oklahoma's Constitution doesn't prohibit all local and special laws, only those which concern certain enumerated subjects. Braitsch v. City of Tulsa, 2018 OK 100, ¶9, 436 P.3d 14, 20; Okla. Const. art. 5, § 46.[1] The majority claims § 61.2 creates an impermissible class because "it singles out for different treatment less than the entire class of similarly situated persons who may sue to recover for bodily injury." Specifically, the majority finds that "no good reason exists for the Legislature to provide a different rate for the same detriment simply because the victim survives the harm-causing event." The majority manufactures a subclass that is reliant on the plaintiff's survivability despite acknowledging that the Legislature is expressly prohibited from imposing a non-economic damages cap in wrongful death actions. See Okla. Const. art 23, § 7 (The right of action to recover damages for injuries resulting in death shall never be abrogated, and the amount recoverable shall not be subject to any statutory limitation...."). Because the Legislature is constitutionally forbidden to restrict non-economic damages in wrongful death actions, the "impermissible" class concocted by the majority is a constitutional impossibility and cannot serve as the basis with which to find § 61.2 unconstitutional.[2]

¶5 Moreover, the statute's plain language indicates its general applicability as it applies equally to ALL plaintiffs with a claimed bodily injury. There is no subclass impermissibly distinguishing the types of claims as in Zeier v. Zimmer, 2006 OK 98, 152 P.3d 861 (medical malpractice), Wall v. Marouk, 2013 OK 36, 302 P.3d 775 (professional negligence); or Montgomery v. Potter, 2014 OK 118, 341 P.3d 660 (non-economic damages unrecoverable for injuries caused by uninsured drivers). But see, Lee v Bueno, 2016 OK 97, 381 P.3d 736 (statute limiting admissibility of evidence concerning medical costs in personal injury litigation to what had actually been paid or was owed for a party's medical treatment, rather than the amount billed for that treatment, was not an unconstitutional special law). I would find that § 61.2 is a general law and does not violate the constitutional prohibition of special laws under Okla. Const. art. 5, § 46. Accordingly, I dissent.

 

FOOTNOTES

[1] Okla. Const. art 5, § 46 provides, in pertinent part:

The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:

Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals, or providing or changing the methods for the collection of debts, or the enforcement of judgments or prescribing the effect of judicial sales of real estate.

The Legislature has the power to define what constitutes an actionable wrong, including, within constitutional limits, the ability to abolish or modify common law. St. Paul Fire & Marine Ins. Co. v. Getty Oil Co., 1989 OK 139, ¶14, 782 P.2d 915, 918-919; Okla. Const. art. 5, § 36. We have recognized this ability is necessary "to reflect a change of time and circumstance." St. Paul Fire & Marine Ins. Co. v. Getty Oil Co., 1989 OK 139, ¶14, 782 P.2d 915, 918-919. Section 61.2's cap on non-economic damages creates an affirmative defense, which is a statutory, substantive right. Because § 46 does not contain a limitation on the Legislature's power to define an element of a tort, such as the damages element, I don't believe this constitutional section is applicable herein to challenge the validity of § 61.2.

[2] No doubt § 61.2, as written, would apply to wrongful death actions if not for the existence of Okla. Const. art. 23, § 7.

EDMONDSON, J., DISSENT, and joined by FISCHER, S.J.

I. Introduction

¶1 I cannot join the Court's opinion. The Court holds the statutory cap on damages in 23 O.S. 2011 § 61.2 is an unconstitutional special law. I disagree. The statutory cap on noneconomic damages is not a prohibited special law. A legislative cap on damages when properly enacted as a partial defense or defining the nature of a cause of action, within certain constitutional limits, is included within the historically recognized role of a legislature in defining, creating, or abolishing a legal cause of action. None of plaintiffs' challenges have any merit on the issue whether the Legislature may create a cap on damages.

¶2 Plaintiffs also challenge the Legislature's specific method the cap is enforced or applied in a legal action. One of plaintiffs' challenges has merit. Language in § 61.2 prohibits a jury from being informed of the cap and applying it to the action, and this language infringes on the constitutional function of a jury specified in Okla. Const. Art. 7 § 15. The language in § 61.2 on the method of enforcing the cap apart from a jury is severable from the language creating the cap on damages. Both defendants and plaintiffs are entitled to a properly instructed jury applying the cap on damages and the matter should be remanded for a new trial for the benefit of both sides to this controversy.

¶3 The Court's opinion holds no reason exists to reverse the judgment based upon the seven assignments of error in defendant's counter-appeal. If the matter was remanded for a new trial as I suggest, then to the extent any of defendant's assignments of error, or parts thereof, are imperfectly preserved for appeal they could be renewed in the trial court on remand.[1] Defendant's assignments of error which are properly before us do not raise any reason for reversing the trial court's judgment. The Court has not provided a detailed explanation with authority showing the errors in defendant's arguments in the counter-appeal. I see no reason for burdening my dissent with several pages of explanation and citations to authority when such may, or may not, disagree with the explanation and authority left unexpressed by the Court's opinion adjudicating the counter-appeal.

¶4 In summary, the Oklahoma Legislature's constitutional function includes creating, abolishing, and defining a legal cause of action, and this function includes creating a cap on damages for a cause of action, unless prohibited by a provision of the Oklahoma or U.S. Constitutions. No claim by plaintiffs herein shows any provision of those Constitutions acting to prohibit the Oklahoma Legislature from creating the § 61.2 cap on damages. Secondly, a jury's constitutional function includes being informed of the law and applying the law to the matters before it. A jury has the constitutional function of applying the law, including a legislative cap on damages, and this function is severable from the unconstitutional language in § 61.2 requiring a judge to apply the cap. The matter should be remanded for a new trial with the jury applying the cap on damages in 23 O.S. § 61.2.

II. Art. 5 § 46, the Legislature's Cap on Damages, and the Court's Opinion

¶5 The Court concludes the cap on noneconomic damages is a special law because it "targets for different treatment less than the entire class of similarly situated persons who sue to recover for bodily injury;" and this is so because the statute "purports to limit recovery for pain and suffering in cases where the plaintiff survives the injury-causing event, when persons who die from the injury-causing event face no such limitation." Court's Opinion at ¶ 7. The Court's opinion states "no good reason exists to treat a person who survives the harm-causing event differently with respect to recovery for the very same detriment." Id. ¶ at 8. The Court observes: "the only power the people have given the Legislature to enact statutory limits on the amount recoverable in civil actions is found in Article 23, Section 7, and is addressed to 'civil actions or claims against the state or any of its political subdivisions.'" Id. at ¶ 14. The Court characterizes this controversy as a "private-rights dispute" not involving "public-policy interests." Id.

¶6 The Court's reasoning is flawed in several respects. The reasoning states the Legislature must legislatively treat tort actions the same as a wrongful death action when the tort actions and a wrongful death action have a common element to their causes of action. The Court's analysis finds the source of this limitation in its application of Okla. Const. Art. 5 § 46, Art. 23 § 7, and an ipse dixit assessment that "no good reason exists to treat a person who survives the harm-causing event differently with respect to recovery for the very same detriment." Because the Court has a combined analysis of the Legislature's power to define a cause of action, Art. 5 § 46, and rationality for regulating bodily-injury actions, I respond with a combined analysis.

¶7 A constitutional analysis of the power of the Oklahoma Legislature begins with the well-known judicial recognition that the Oklahoma Legislature is constitutionally vested by Article 5 § 36[2] of our Constitution with a supreme legislative power extending to all rightful subjects,[3] and the presumed constitutionality of a legislative enactment is rebutted only when either the State Constitution or federal law prohibits that enactment.[4] This Court does not examine the Constitution to decide whether the Legislature is permitted to act, only whether it is prohibited from acting.[5] The Court explained thirty years ago in Fair School Finance Council of Oklahoma, Inc. v. State:[6]

The United States Constitution is one of restricted authority and delegated powers. By contrast our state constitution is not one of limited powers where the State's authority is restricted to the four corners of the document. Rather, the Oklahoma Constitution addresses not only those areas deemed fundamental but also others which could have been left to statutory enactment. While the Congress of the United States may do only what the federal constitution has granted it the power to do, our state Legislature generally may do, as to proper subjects of legislation, all but that which it is prohibited from doing.

The majority's observation that Art. 23 § 7 is "the only power the people have given the Legislature to enact statutory limits on the amount recoverable" is not relevant since the general legislative power to create a limit on the amount recoverable in a civil action is permitted unless expressly prohibited by a constitutional provision.

¶8 Implying that the power of the Legislature to create a limit of possible recovery in civil actions generally because the power was expressly given to the Legislature in Okla. Const. Art. 23 § 7 [7] ignores both the history of the 1985 amendment to Art. 23 § 7 and the original purpose of Art. 23 § 7. The 1985 amendment had its origin in a legislative referendum crafting a response to the Court's 1983 opinion in Vanderpool v. State,[8] which withdrew judicially-created sovereign immunity as a defense to a tort action in Oklahoma. The Legislature's response removed limits on recovery in actions against the State pursuant to the new Governmental Tort Claims Act (51 O.S.Supp.1985 §§ 151-171), and legislative concern was based upon the fact that this new statutory action would allow some wrongful death claims with notice requirements in the new Act that were not identical with a statute of limitations for a wrongful death action.[9]

¶9 Further, this concept was reinforced three years after the amendment's effective date in 1985 when a party urged that the former Political Subdivision Tort Claims Act (51 O.S.1981 §§ 151 et seq.), was inconsistent with Okla. Const. Art. 23 § 7, which then existed in a form without the express language authorizing a legislative limitation on a right of recovery in such actions. Justice Summers' 1988 opinion for the Court explained: (1) Wrongful death actions were unknown at common law and existed solely by virtue of statutory enactment; (2) Article 23 § 7 was created to embody into the fundamental law the statutory "right of action" for wrongful death; (3) The Oklahoma statutory authorization for wrongful death prior to, and after adoption of, Art. 23 § 7 did not provide for an action against the sovereign; and (4) The Political Subdivision Tort Claims act barred the plaintiffs' action for wrongful death because the pre-Vanderpool sovereign immunity was in effect and acted to trump the statutory right protected by Art. 23 § 7.[10] In summary, Article 23 § 7 applies and protects the wrongful death action when no immunity is present. Again, the concern of the Legislature was for creating a uniform procedure for a governmental tort claim when no immunity is present without Art. 23 § 7 interfering with that governmental tort claim which existed solely by virtue of statutory enactment.

¶10 The majority fails to recognize the pre-1985 limitation on the Legislature in Art. 23 § 7 to alter a wrongful death statutory action was eased or lessened in 1985 by allowing the legislature to create a period for notice and filing suit in the governmental tort claims act when immunity would not exist and a person could recover for a wrongful death within the time period specified for governmental tort claims. In other words, if the Legislature allowed a person to pursue a governmental tort claims action for wrongful death under the new 1985 Act, then the amended Art. 23 § 7 would not require governmental tort actions alleging wrongful death to have a limitations period specified in a wrongful death statute.[11] The Court's opinion has improperly taken a constitutional amendment to Art. 23 § 7 designed to guarantee the Legislature would not be hamstrung in providing a procedure for governmental tort wrongful death actions and turned that amendment into a constitutional restriction on the Legislature's general powers when creating, abolishing, and defining a cause of action.

¶11 The Legislature created the § 61.2 cap on actual noneconomic damages in a civil action arising from a claimed bodily injury. Damages are a legal remedy in the form of monetary compensation awarded to a party because that party suffered a legal wrong or injury caused by the defendant.[12] The general rule is that the measure of damages for a tort is such amount as will compensate for all the detriment proximately caused thereby.[13] Historically, this Court has explained an injured party is to be placed as near as may be in the situation which he or she would have occupied had not the wrong been done,[14] and the measure of damages for a tort is such amount as will compensate for all the detriment proximately caused thereby.[15] An injured plaintiff has been entitled to compensation for physical pain and suffering directly resulting from the wrongful acts of the defendant, and future pain and suffering on the part of the injured person in consequence of the injury have constituted a proper element of the damages which may be allowed.[16]

¶12 Damages may be classified as a remedy for certain purposes and a person generally possesses no vested right to a remedy or procedure altered by the Legislature.[17] But if the legislation is more than a procedural change to the remedy and affects the substantive right of a party, then a person has a vested right to the remedy existing when the cause of action accrues.[18] Classifying damages as a remedy which may or may not give rise to a substantive right[19] in the context of retroactive application does not address the question presented concerning the cap and a Legislature's power to change a common law action as it relates to a party's right to a jury trial or any other personal constitutional right.

¶13 The Court objects to wrongful death plaintiffs receiving more compensation than other plaintiffs who have suffered a bodily injury. A similar argument by plaintiffs is framed in terms of an Okla. Const. Art. 2 § 19[20] right to a jury trial to receive complete compensation from a jury.[21] When Art. 2 § 19 involving the right to a jury trial was adopted courts recognized harms occurred in fact but without a corresponding legal harm, i.e., an injury in fact without a corresponding legal cause of action.[22] The common law prior to adoption of Art. 2 § 19 did not guarantee a right to complete legal compensation for an injury in fact. For example, the common law used the ancient phrase, damnum absque injuria,[23] for an injury to the person for which the law furnished no redress, and the concept applied when there existed an injury in fact without a legal duty.[24] A similar result has occurred in those cases where this Court has explained a plaintiff's degree of involvement in the event causing injury, i.e., "the bystander" cases, was insufficient for a basis of liability when a defendant's actions caused plaintiff's emotional distress.[25] In such instances the law recognizes plaintiffs may indeed have an actual injury in fact, but the plaintiffs' injuries are not legally compensable.

¶14 This absence of a right to a complete legal remedy, or right for complete compensation for an injury in fact, is part of the historically understood role for a Legislature establishing and destroying legal rights and duties (liabilities).[26] Torts do die, they are not eternal, and sometimes the means of their demise are legislative enactments.[27] When a tort dies from legislative abolishment it is not the role of an appellate court to resurrect it because an individual has suffered an injury. For example, at one time the common law provided "heart balm" or amatory tort actions based upon a third party's interference with a marriage relationship and these actions often evolved into an action authorized by statute.[28] Oklahoma at one time recognized an alienation-of-affections action,[29] and then the Legislature abolished this type of action.[30] There were no doubt people after the effective date of the statute who could not proceed with an amatory tort action although their injury had been historically recognized at common law prior to Statehood.

¶15 In addition to the Legislature's power to destroy a person's right to recover damages, the Legislature may also limit in part a person's right to recover by providing a partial defense or create a partial recovery where one did not previously exist in the law. In 1986 the Court explained the Legislature could constitutionally remove a common-law defense when a person sought damages in a surface damages action authorized by statute, and the Court noted no one possessed a vested right in a common-law defense.[31] The $350,000 cap is simply the conceptual mirror-image of what the Legislature accomplished and the Court approved in 1986. In our case today, the Legislature is adding a defense (to the extent of damages over the cap) to an action instead of removing a defense in its entirety.[32] The Legislature is given the power pursuant to Okla. Const. Art. 5 § 36 to create, alter, or destroy a cause of action.[33] The Legislature's cap is a statutory effort similar to our comparative negligence statutory scheme where law concerning liability was altered. There was no common law right, or any personal constitutional right, for a party to obtain complete legal compensation in a manner supplanting the Legislature's role in defining a cause of action. Of course, any argument which relies solely on the power of a legislative body to create or abolish statutory rights and remedies as proof that a statutory classification is thereby constitutional is fallacious; and is also historically-discredited insufficient legal reasoning in circumstances where a legislative police power has been exercised in an unconstitutional manner.[34] However, the Court avoids the issue of the Legislature's power to alter a cause of action and the presence of public interests other than its ipse dixit statement a public interest is not present. The Court avoids the issues whether (1) any public interest reason may constitutionally support limiting damages for torts involving bodily injury, and (2) a legislative expression defining a cause of action in this matter is a constitutional exercise of a police power based upon the challenges by plaintiffs. I conclude the plaintiffs have not met their burden to show an unconstitutional exercise of a police power by the Legislature when it defined or amended a cause of action involving bodily injury.[35]

¶16 The Court's opinion states that the matter before us does not involve "public interests" but merely a "private-rights dispute." The Court holds a bodily injury classification is unreasonable for a "private-rights dispute," and a cap on damages based on such is not a proper legislative regulation of tort actions in Oklahoma. One could hardly think of a dispute involving interests more private than those in the heart balm or amatory actions, but this Court as well as others have recognized legislative regulation legitimately exercised when abolishing such tort actions. Of course, the private nature of the rights at issue in heart balm actions is a not sufficient reason for characterizing such actions as private and without any public interests supporting legislative regulation of such torts. Similarly, the Court characterizing today's controversy as a "private-rights dispute" may not be based upon the fact that plaintiffs and defendant are not public entities or that the action is for tort damages arising from the conduct of a party. I now turn to the Court's unsupported characterization of this controversy as a mere private dispute and its failure to recognize and discuss the public interests involved.

¶17 The parties and amici curiae make several legal arguments which have at their core very different views on the priorities assigned to the function of tort law in our society as it relates to a cap on damages. One of these differences is a clash between (1) the view that tort law should prioritize and serve a State-recognized interest to create lower insurance costs, and (2) the view that tort law should prioritize and serve a State-recognized interest requiring every person to be fully compensated in a court of law for the actual economic and noneconomic damages caused by another person when adjudicated in the context of a private law dispute.[36] Both of these views recognize a public interest in a proper functioning tort system, but they of course disagree on the nature of that system and the role a cap on damages should or should not have in such a system. This clash of views occurs in many types of controversies where damages have been capped. For example, a cap on the amount an injured party may recover is frequently found in no-fault compensation statutory schemes where a State interest is present and both the injured party and the party causing the injury receive statutory benefits when participating in the compensation program.[37] One author has opined that in such a circumstance the individual rights perspective in tort yielded "to a collective, insurance-based model of compensation."[38] Some authors argue caps on damages will bring less volatility to the insurance premium market.[39] Other authors argue that while adoption of a noneconomic damages cap reduces the number of torts filed and the number of medical malpractice filings in different states, when the noneconomic damages cap was eliminated the rate of medical malpractice filings did not rebound to its previous rate but was further depressed.[40] One author recently noted that "twenty-one states have already adopted caps on noneconomic damages, while twenty-two have caps on total compensation."[41]

¶18 As the Attorney General, certain amici curiae, and the defendant indicate, the Court is not presented with a controversy where the Legislature has allocated both benefits and detriments as in a no-fault compensation program, but an instance where a legislative determination has been made that our society, as a collective, benefits from not fully compensating injured plaintiffs for their actual injuries. For example, the Attorney General's brief argues that capping actual noneconomic damages in negligence actions is reasonable because a cap furthers the public's access to certain types of medical care by lowering medical malpractice insurance premiums and reducing the desire of physicians to "order unnecessary tests and referrals" as practicing medicine defensively to avoid litigation. In summary, his argument is that society needs doctors and the cost for this need is made by shifting the loss for certain damages to the injured individuals without fully compensating them for their injuries. He argues lower insurance premiums and their effect on business costs should outweigh and receive greater importance and legal value than compensating an individual for his or her actual injuries.

¶19 The defendant, Attorney General, and amici curiae argue their positions are supported by courts in many other states which have rejected state constitutional challenges to statutory caps on noneconomic damages in tort actions, and these include but are not limited to Alaska,[42] Idaho,[43] Kansas,[44] Nebraska,[45] Ohio,[46] Utah[47] and Virginia.[48]

¶20 Wisconsin and Indiana have approached the issues with statutory plans combining both limitation of liability with additional compensation for an injured party. Wisconsin's court has rejected constitutional challenge when state statutes provide a $750,000 cap, made health care providers not personally liable for medical malpractice when they have satisfied statutorily required insurance coverage, and a fund was created to compensate those injured for damages in excess of the mandatory liability coverage.[49] An Indiana court determined a limitation on a plaintiff's recovery did not violate equal protection, the right to jury trial, and other constitutional claims.[50] However, this court's decision occurred in the context of a statutory scheme providing (1) a liability limit for medical providers and requiring their insurance coverage for a stated amount, (2) compensation to an injured party from a compensation fund for damages in excess of the medical malpractice liability limit, and (3) gradually increasing over time the potential statutory amount an injured party could receive from the compensation fund.[51] The statutory schemes of Wisconsin and Indiana requiring mandatory insurance coverage, provider limits on liability, and compensation in excess of that liability appear to fit within a category of court review suggested by an article in the American Law Reports explaining statutes which limit an injured party's recovery for damages "may be evaluated in terms of the reasonability of a complete statutory scheme affecting many aspects of medical malpractice litigation," including an analysis of the statutory quid pro quo benefits given to an injured party whose damages have been capped.[52] Such statutory schemes appear to have the goal of lowering insurance costs while simultaneously providing a mechanism to compensate injured parties. However, courts have generally not analyzed capped damages and the differences between (1) a quid pro quo requirement involving a claim based upon a common law right/liability as opposed to claim based upon a constitutional right/liability, or (2) differences due to applying a quid pro quo analysis to the particular right alleged to have been violated.[53]

¶21 Courts in other states have concluded that caps on damages are unconstitutional, and these include, but are not limited to, Florida,[54] Illinois,[55] South Dakota,[56] and Washington.[57] The Supreme Court of Missouri has held a statutory cap on punitive damages and a restriction on post-judgment interest are constitutional, but a cap on noneconomic damages violates a party's right to a jury trial.[58] A Texas court determined a $500,000 cap on noneconomic damages violated open courts provision of state constitution, and the court's decision was followed by a constitutional amendment authorizing legislative caps on noneconomic damages.[59] One author has recently noted that some state courts have held a statutory cap on damages curtails a civil jury trial right and exceeds legislative authority, as well as noting these decisions are "in the minority."[60] State courts have continued to disagree whether caps on damages violate provisions of state constitutions. In the absence of Oklahoma formally adopting law from another state which has the same constitutional provisions,[61] court decisions from other states which are well-reasoned have no more authority than persuasive effect if they are consistent with Oklahoma's jurisprudence, and when inconsistent they have no legal effect in our courts.[62] This Court must examine the plaintiffs' and defendant's arguments based upon the law in this State.

¶22 The plaintiffs, defendant, and amici curiae in this controversy do not expressly identify the exact logic or ratio decidendi the Court must use to define and adjudicate personal rights and public interests in this controversy. However, their arguments invoke different elements of at least four different decision-making methods each of which has a different place for judicial recognition of a public interest in its method.[63] The Court concludes, without explanation, there is no public interest involved and of course finds no need to engage in any judicial decision-making requiring a balancing between private and public interests as suggested by some of the arguments herein. Interestingly, when the Court states there is no public interest involved in this dispute it is championing an extreme view that not even plaintiffs adopt. Some arguments by plaintiffs and supporting amicus curiae do recognize a general public interest involved in the controversy, but challenge defendant's assessment of the importance of that interest for a balancing or a hierarchy of values assessment by the Court. Further, the Court's failure to recognize the several public interests and public policy raised in this controversy ignores the basic or fundamental nature of a public interest present when an Oklahoma cause of action is defined or redefined by either the Legislature or this Court for judicial enforcement in Oklahoma courts.[64]

¶23 The Court's opinion objects to the Legislature using "bodily injury" as a classification for torts and the types of legal damages. Of course, insurance policies are frequently issued to cover damage to property and damage to person or "bodily injury," and our Legislature and this Court have recognized the "public interests" in legislative regulation of insurance concerning bodily injury in a variety of circumstances, including automotive polices and polices obtained by schools.[65] As the discussion herein indicates, the cap on noneconomic damages in actions involving "bodily injury" is explained by defendant and supporting amici curiae as a method for regulating insurance, specifically insurance for damage to person.

¶24 The Court's opinion states "no good reason exists to treat a person who survives the harm-causing event differently with respect to recovery for the very same detriment"[66] and it compares the wrongful death action with other tort actions for bodily injury. Of course, a quick answer is that the Legislature may like to create a cap on all tort actions involving bodily injury, but is prohibited from doing so by Art. 23 § 7. In one sense, the Legislature is not the reason for the distinction between the two actions, but Art. 23 § 7 itself. The People, in enacting Art. 23 § 7 have said "wrongful death actions are different from all other actions and we the People are enshrining this difference in the fundamental law (Art. 23 § 7) so the Legislature may not take it away from us, or regulate it, like other causes of action."

¶25 An example of one flaw in the Court's reasoning may be demonstrated from an opinion Justice Summers authored for the Court thirty years ago, St. Paul Fire & Marine Ins. Co. v. Getty Oil,[67] one of our cases discussing statutes of repose. St. Paul Fire & Marine Ins. Co. highlights the difference between legislative alteration of an element to a cause of action, i.e., legislation affecting the right itself versus legislature not altering a substantive right. This difference was used in St. Paul Fire & Marine Ins. Co. to distinguish Reynolds v. Porter,[68] which the Court uses for its analysis today. In summary, when the Legislature alters an element to the cause of action, by creating a partial defense such as a cap of damages, Reynolds v. Porter does not apply, and the Court's Art. 5 § 46 analysis today conflates two distinguishable types of legislative acts for an Art. 5 § 46 analysis.

¶26 A statute of repose acts as a limitation on the right and not the remedy, and by acting on the right itself acts to create a time-related element to a cause of action.[69] This added element to the cause of action is entirely a creature of the Legislature.[70] A statute of repose does not violate Okla. Const. Art. 5 § 46, and the Court stated the following.

By actually defining a substantive right, the statute of repose clearly distinguishes itself from the statute at issue in Reynolds, in which the statute of limitations failed by identifying and treating differently one subclass of tort claimants from another.

No such inequity obtains by operation of the statute of repose here at issue. Section 109 [the statute of repose] itself defines the class.

St. Paul Fire & Marine Ins. Co., 1989 OK 139, 782 P.2d at 921, distinguishing Reynolds v. Porter, supra.

Oklahoma Constitution, Article 5 § 46, prohibits constitutionally-specified local or special laws for certain purposes.[71] In Reynolds the constitutionally-prohibited purpose was a limitation in a civil action, but St. Paul Fire & Marine Ins. Co. involved the Legislature defining the contours of, or elements to, a civil action; i.e., St. Paul Fire & Marine Ins. Co. involved a civil action subject to a statute of repose legislatively amending or altering the cause of action. The legislative act defining the cause of action did not violate Okla. Const. Art. 5 § 46 because a statute defining a cause of action or substantive right "falls outside the enumerated prohibitions in Art. 5, § 46 of the Oklahoma Constitution, and its validity cannot be successfully attacked thereunder."[72]

¶27 Language in the challenged statute must involve "one of the subjects listed in section 46."[73] The Court's opinion fails to expressly state the exact language in Art. 5 § 46 that prohibits 23 O.S. § 61.2. The Court does refer to the Art. 5 § 46 requirement for uniform procedure, but this has no application to § 61.2 which creates a statutory substantive right[74] to be enforced via an affirmative defense. The Tenth Circuit Court of Appeals has recently explained (1) a state statutory cap on damages is state "substantive law,"[75] (2) federal courts must apply substantive law in diversity cases,[76] and (3) upon reviewing both 23 O.S. § 61.2 and Oklahoma Supreme Court decisions concluded the damages cap in 23 O.S. § 61.2 is an affirmative defense and a personal substantive right of a defendant.[77] Section 61.2 does not unconstitutionally regulate the practice or jurisdiction of, or change the rules of evidence in judicial proceedings. The statute creates a substantive right enforced as other substantive rights in tort actions where defenses are recognized.

¶28 In summary, I simply cannot join in the Court's analysis of 23 O.S. § 61.2 and Okla. Const. Art. 5 § 46.

III. Analysis of Okla. Const. Art. 5 § 46

¶29 When this Court determines the constitutional validity of a legislative enactment: (1) This Court must give effect to the intent of the Constitution's framers and the people adopting it without regard to our own view of a provision's propriety, wisdom, desirability, necessity, or practicality as a working proposition; (2) This Court's search for the framers' and electorate's intent is to be conducted by examining the text of the instrument itself and when the text is not ambiguous, the Court may not look for a meaning outside its bounds; (3) The Court may presume the Legislature conducts its business with due regard for the framers' and people's intent; (4) A duly-enacted statute will be presumed to conform to the state and federal Constitutions and will be upheld unless it is clearly, palpably and plainly inconsistent with the Constitution; and (5) The party challenging a statute's constitutionality possesses a heavy burden to establish the statute is in excess of legislative power.[78]

¶30 Plaintiffs argue 23 O.S. 2011 § 61.2 is a constitutionally prohibited special law violating Okla. Const. Art. 5 § 46. I have explained herein Art. 5 § 46 does not contain a limitation on the Legislature's power to define one of the elements to a tort cause of action, i.e., the damages element.[79] Article 5 § 46 simply does not apply herein. I apply this principle to the specific arguments by plaintiffs' and address their claim of improper classification.

¶31 Again, this provision prohibits the Legislature from creating a special law in certain categories of law. Article 5 § 46 states in part:

The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing: . . .

Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals, or providing or changing the methods for the collection of debts, or the enforcement of judgments or prescribing the effect of judicial sales of real estate; . . . .

Plaintiffs argue 23 O.S. 2011 § 61.2 is a constitutionally prohibited special law because it applies to a subset of tort plaintiffs and not all tort plaintiffs. Plaintiffs identify the subset as (1) personal injury plaintiffs, (2) not killed by defendant's acts or omissions, and (3) who are awarded more than $350,000 in noneconomic damages. Plaintiffs' Art. 5 § 46 challenge also states section 61.2 is an unconstitutional special law because the statute creates exceptions to the cap when a defendant's acts or failures to act were in reckless disregard for the rights of others, grossly negligent, fraudulent, or intentional or with malice. Plaintiffs also argue § 61.2 is an unconstitutional special law by imposing a "clear and convincing" evidentiary standard as opposed to a "preponderance of the evidence" standard for plaintiff to show gross negligence, fraud, or intentional or reckless conduct. Plaintiffs argue § 61.2 is a non-uniform law concerning the rules of evidence, because it requires both the judge and the jury to determine an issue of fact and law concerning when the acts of the defendant relating to removal of the $350,000 cap because of the language "if the judge and jury finds" in 61.2 (C). Plaintiffs state this participation of the judge in an issue of fact is a procedure interfering with the jury's function.

¶32 The terms of Okla. Const. Art. 5 § 46 command that the practice and jurisdiction of court proceedings and the rules of evidence be symmetrical and apply equally across the board for an entire class of similarly situated persons or things.[80] In Lee v. Bueno the Oklahoma Supreme Court stated that when legislation is challenged under Art. 5 § 46, the only issue to be resolved is whether a statute upon a subject enumerated in the constitutional provision targets for different treatment less than an entire class of similarly situated persons or things.[81] In Lee v. Bueno, the Court addressed whether 12 O.S. 2011 § 3009.1 was a special law prohibited by Okla. Const. Art. 5 § 46. The Court explained § 3009.1 limited certain types of evidence admissible by parties in the trial of any civil case involving personal injury.[82] Plaintiff argued therein the general class of plaintiffs with a bodily injury was subdivided by § 3009.1 into classes receiving different treatment based upon insurance status and decisions made by medical providers. The Court rejected the argument and explained the statute "applies uniformly to all personal injury claimants . . . [and] it does not specifically target a particular subclass."[83] Defendants argue that § 61.2 applies to all cases involving bodily injury similar to § 3009.1 applying to all plaintiffs alleging bodily injury.

¶33 Plaintiffs argue § 61.2 facially states application to all cases arising from bodily injury, but the statute also facially creates subclasses within the class of bodily injury cases. In support they assert the cap on noneconomic damages does "not apply to actions for wrongful death, or in civil actions arising from bodily injury where the damages are low." They also assert the cap on damages does not apply in classes where plaintiffs prove by clear and convincing evidence that the defendant's acts or failures to act were in reckless disregard for the rights of others, grossly negligent, fraudulent, or intentional or with malice.

¶34 In Montgomery v. Potter,[84] the Court addressed the scope of 47 O.S.2011 § 7-116, and concluded it violated Okla. Const. Art. 5 § 46. The Court first noted § 61.2 provided a "general class" provided by section 61.2: "A general class has been identified in 23 O.S.2011 § 61.2 which allows for all plaintiffs with bodily injury the ability to recover pain and suffering." The Court then noted 47 O.S. § 7--116 targeted specific individuals, uninsured drivers, within the general statutory class of plaintiffs with bodily injuries (23 O.S. § 61.2), and subjected the uninsured drivers to "special treatment in the form of limited remedies, regardless of whether the plaintiff was at fault in causing the accident or not."[85] In Montgomery the Court did not address whether section 61.2 was a general or special law, but only characterized it as general in the sense that 47 O.S. § 7-116 carved out a class of bodily injury plaintiffs from potential plaintiffs under 23 O.S. § 61.2.

¶35 Section 61.2 treats defendants differently for damages based upon their culpability or fault in causing the specific injuries which are before the jury to adjudicate. By treating the defendants differently it may be said the class of potential plaintiffs will potentially receive different damages based the jury's determination of a particular defendant's culpability. This determination of damages based upon degree of culpability is similar to a jury determining comparative negligence issues. Treating defendants differently based upon their culpability with a potential for increased damages is in accordance with the public policy of Oklahoma as I explain herein.

¶36 The other class distinction raised by plaintiffs is that plaintiffs with low-damages receive complete compensation, but the high-damages plaintiffs receive less than complete compensation. This argument is similar to Montgomery where § 47-716 prohibited plaintiffs, as uninsured drivers, from recovering damages for pain and suffering, but "all plaintiffs" had a right to recover for pain and suffering under 23 O.S. § 61.2 (as that statute defined that right).[86] Plaintiffs' claim is addressed not to the clear--and-convincing standard in § 61.2, but to the creation of two classes based solely upon a statutory damages cap.

¶37 The scope of plaintiffs' claim is extensive. The underlying rationale in plaintiffs' argument is that the Legislature's power to create a cause of action or defense pursuant to Article 5 § 36 is limited by Art. 5 § 46's prohibition on a special law regulating the practice of the courts because the § 46 restriction includes a statutory uniform cap on damages creating two classes of plaintiffs. Plaintiffs' claim is broad enough to challenge any legislatively-created damage cap unless specifically approved in the Constitution, i.e., Okla. Const. Art. 23 § 7 provision for wrongful death governmental tort actions and enacted for a uniform procedure. The Oklahoma Supreme Court has rejected equal protection and special law challenges to a statutory liability scheme which included statutory caps when the Court determined the liability scheme was rationally related to a state interest within the power of the Legislature to address.[87] The cap applies to all personal injury plaintiffs but has a varying result based upon a jury's determination.

¶38 I would hold the cap on noneconomic damages with a clear-and-convincing standard in 23 O.S.2011 § 61.2 do not violate Okla. Const. Art 5 § 46 provided those provisions are deemed severable from an unconstitutional portion which I now explain.

IV. Okla. Const. Art. 7§ 15 Challenge to 23 O.S.2011 § 61.2.

¶39 Plaintiffs argue one effect of 23 O.S. 2011 § 61.2 violates Okla. Const. Art. 7 § 15. This statute states as follows.

A. In any civil action arising from a claimed bodily injury, the amount of compensation which the trier of fact may award a plaintiff for economic loss shall not be subject to any limitation.

B. Except as provided in subsection C of this section, in any civil action arising from a claimed bodily injury, the amount of compensation which a trier of fact may award a plaintiff for noneconomic loss shall not exceed Three Hundred Fifty Thousand Dollars ($350,000.00), regardless of the number of parties against whom the action is brought or the number of actions brought.

C. Notwithstanding subsection B of this section, there shall be no limit on the amount of noneconomic damages which the trier of fact may award the plaintiff in a civil action arising from a claimed bodily injury resulting from negligence if the judge and jury finds, by clear and convincing evidence, that the defendant's acts or failures to act were:

1. In reckless disregard for the rights of others;
2. Grossly negligent;
3. Fraudulent; or
4. Intentional or with malice.

D. In the trial of a civil action arising from claimed bodily injury, if the verdict is for the plaintiff, the court, in a nonjury trial, shall make findings of fact, and the jury, in a trial by jury, shall return a general verdict accompanied by answers to interrogatories, which shall specify all of the following:

1. The total compensatory damages recoverable by the plaintiff;
2. That portion of the total compensatory damages representing the plaintiff's economic loss;
3. That portion of the total compensatory damages representing the plaintiff's noneconomic loss; and
4. If alleged, whether the conduct of the defendant was or amounted to:

a. reckless disregard for the rights of others,
b. gross negligence,
c. fraud, or
d. intentional or malicious conduct.

E. In any civil action to recover damages arising from claimed bodily injury, after the trier of fact makes the findings required by subsection D of this section, the court shall enter judgment in favor of the plaintiff for economic damages in the amount determined pursuant to paragraph 2 of subsection D of this section, and subject to paragraph 4 of subsection D of this section, the court shall enter a judgment in favor of the plaintiff for noneconomic damages. Except as provided in subsection C of this section, in no event shall a judgment for noneconomic damages exceed the maximum recoverable amounts set forth in subsection B of this section. Subsection B of this section shall be applied in a jury trial only after the trier of fact has made its factual findings and determinations as to the amount of the plaintiff's damages.

F. In any civil action arising from claimed bodily injury which is tried to a jury, the jury shall not be instructed with respect to the limit on noneconomic damages set forth in subsection B of this section, nor shall counsel for any party nor any witness inform the jury or potential jurors of such limitations.

G. This section shall not apply to actions brought under The Governmental Tort Claims Act or actions for wrongful death.

H. As used in this section:

1. "Bodily injury" means actual physical injury to the body of a person and sickness or disease resulting therefrom;
2. "Economic damages" means any type of pecuniary harm including, but not limited to:
a. all wages, salaries or other compensation lost as a result of a bodily injury that is the subject of a civil action,
b. all costs incurred for medical care or treatment, rehabilitation services, or other care, treatment, services, products or accommodations as a result of a bodily injury that is the subject of a civil action, or
c. any other costs incurred as a result of a bodily injury that is the subject of a civil action;
3. "Fraudulent" or "fraud" means "actual fraud" as defined pursuant to Section 58 of Title 15 of the Oklahoma Statutes;
4. "Gross negligence" means the want of slight care and diligence;
5. "Malice" involves hatred, spite or ill will, or the doing of a wrongful act intentionally without just cause or excuse;
6. "Noneconomic damages" means nonpecuniary harm that arises from a bodily injury that is the subject of a civil action, including damages for pain and suffering, loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, education, disfigurement, mental anguish and any other intangible loss; and
7. "Reckless disregard of another's rights" shall have the same meaning as willful and wanton conduct and shall mean that the defendant was either aware, or did not care, that there was a substantial and unnecessary risk that his, her or its conduct would cause serious injury to others. In order for the conduct to be in reckless disregard of another's rights, it must have been unreasonable under the circumstances and there must have been a high probability that the conduct would cause serious harm to another person.

I. This section shall apply to civil actions filed on or after November 1, 2011.

In a civil action arising from a claimed bodily injury, this statute limits actual noneconomic compensatory damages to $350,000. This limit does not apply if the defendant acted in reckless disregard for the rights of others. The statute provides a series of procedures a court is instructed to follow in a civil action arising from a claimed bodily injury, such as

requiring a jury to answer special interrogatories specifying the portion of actual noneconomic loss awarded by the jury with an express prohibition on informing the jury that actual noneconomic loss will be capped by the judge.

¶40 Plaintiffs argue the effect of 23 O.S. § 61.2 requires a jury to make special findings of particular questions of fact in violation of Okla. Const. Art. 7 § 15. Plaintiffs argue that § 61.2 requires a jury to find facts relating to damages without a jury instruction on the law of actual noneconomic damages, and the actual award of damages being made by the trial judge instead of the jury. Defendant argues damages are awarded by the jury but capped as a matter of law at the $350,000 amount, and the prohibition on instructing the jury on the cap does not change the "general verdict" required by the statute.

¶41 Section 61.2 states there is a cap of $350,000 for actual noneconomic loss in an action based upon alleged bodily injury regardless of the number of defendants. (61.2 [B]). The cap may be lifted if "the judge and jury finds," by clear and convincing evidence, the defendant's acts, or failures to act, were in reckless disregard for the rights of others; grossly negligent; fraudulent; or intentional or with malice. (61.2 [C]). This finding must be in special interrogatories the jury must answer and return with their verdict. (61.2 [D 4]).

¶42 The jury shall not be instructed with respect to the $350,000 cap. (61.2 [F]). The jury or any potential jurors shall not be informed of the cap by any counsel for any party or any witness.(61.2 [F]). The jury must return a general verdict with answers to special interrogatories. The answers must specify: The total compensatory damages recoverable by the plaintiff; That portion of the total compensatory damages representing the plaintiff's economic loss; and That portion of the total compensatory damages representing the plaintiff's actual noneconomic loss. (61.2 [D 1-3]). After the jury returns its verdict and answers to the interrogatories, the trial judge enters a judgment on the verdict and applies the $350,000 cap on noneconomic damages to the jury's verdict if the answers to interrogatories indicated an award above the cap. (61.2 [E]). I must examine the nature of this statutory cap to determine whether its application in a cause of action is constitutionally required to be within the constitutionally-specified role for a jury.

¶43 Section 61.2(B) states in part "the amount of compensation which a trier of fact may award a plaintiff for noneconomic loss shall not exceed Three Hundred Fifty Thousand Dollars ($350,000.00) . . . ." Whether this language is mandatory and potentially affecting the exercise of power by a court[88] or discretionary depends upon the language of the statute.[89] This statutory language allows for the jury to exercise its discretion in certain cases and lift the cap.[90] This Court construes a statute to be consistent with constitutional provisions, and I conclude the cap is acting as a liability limit on plaintiffs' right to recover damages as a partial affirmative defense, and is not a limit on the power of the District Court in a common law action.[91]

¶44 The Court has noted when comparative negligence is a statutory creation and an affirmative defense. For example, when explaining a choice-of-law issue in 2003 the Court stated the affirmative defense of comparative negligence could not be separated from the tort for which it was a defense.[92] Comparative negligence is a statutory scheme directing a jury to apportion fault and the amount of damages.[93] The cap on damages in this case acts as a similar, although merely partial, limitation on liability and damages.

¶45 Article 7, § 15 of the Oklahoma Constitution states as follows.

In all jury trials the jury shall return a general verdict, and no law in force nor any law hereafter enacted, shall require the court to direct the jury to make findings of particular questions of fact, but the court may, in its discretion, direct such special findings.

The statutory definitions for a general verdict and a special verdict have remained unchanged since codified in our statutes in 1910.

The verdict of a jury is either general or special. A general verdict is that by which they pronounce generally upon all or any of the issues, either in favor of the plaintiff or defendant. A special verdict is that by which the jury finds facts only. It must present the facts as established by the evidence, and not the evidence to prove them; and they must be so presented as that nothing remains to the court but to draw from them conclusions of law.

12 O.S.2011 § 587.

Generally, a verdict of a jury is either general or special. A general verdict is that by which they pronounce generally upon all or any of the issues, either in favor of the plaintiff or defendant, but a special verdict is that by which the jury finds facts only and the judge enters a judgment based on those facts.[94]

¶46 In 1977 the Court explained Art. 7 § 15 is not merely a requirement for a particular form for a verdict,[95] but a requirement of substance for a jury's verdict. In the context of a comparative negligence statute, a party argued a jury should not be told of the legal liability for the cause of action it was actually adjudicating, and the Court explained Okla. Const. Art. 7 §15 prohibited such procedure.

It has been said 'the special verdict is the very cornerstone of the comparative negligence concept, and the jury does not, and should not, know the legal effect and result of its answers to the interrogatories in the special verdict.' The jury under a special verdict is limited to the findings of specified facts and should not know the legal effect of its answers. Defendant is correct that in those states using a special verdict the court may create error by informing the jury of the effect of its answers. However, in Oklahoma, because our verdict must be general, this rule of law has no application. The jury not only must know the legal effect of its findings, but must determine the ultimate result, limited only by the special findings as to each parties degree of negligence. Such special findings are constitutionally and statutorily permitted. Under a general verdict, a jury must know the effect of its answers or it is not a general verdict.

Smith v. Gizzi, 1977 OK 91, 564 P.2d 1009, 1013 (notes omitted).

In Smith the Court explained a jury determining damages must know by the court's instructions the law applicable to the issue being adjudicated by the jury.

¶47 Jury instructions are explanation of the law of a case enabling a jury to better understand its duty and to arrive at a correct conclusion.[96] The instructions must accurately reflect the law and apply to the issues.[97] The instructions apply to the issues when they are designed to state the law concerning the evidence presented and address what the jury is required by that evidence to adjudicate.[98] The constitutionally-specified role for a jury is to determine damages in a common-law action,[99] which includes consideration of affirmative defenses relating to the measure of damages.

¶48 Plaintiffs cite several of our opinions stating a jury determines the amount of damages recoverable in a personal injury controversy. I certainly agree the jury's role as the trier of fact is to determine the amount of damages to be awarded to an injured party.[100] In 1906 the Supreme Court for the Oklahoma Territory quoted the U.S. Supreme Court and explained an adjudication of damages must depend very much on the good sense and sound judgment of the jury upon all the facts and circumstances of the particular case.[101] A jury must determine the dollar amount of damages, but a jury's discretion is guided or constrained by the law applicable to the controversy. A jury's award which is contrary to the law is grounds for a new trial, and this principle has been codified in our law since 1910 and before.[102]

¶49 In Grisham v. City of Oklahoma City, the Court recently explained the following.[103]

A trial court has a duty to instruct on the decisive issues raised by the pleadings and the evidence. This rule is consistent with the function of jury instructions as well as the concept of fairness to both sides of the controversy. A plaintiff has a right to have his or her theories of recovery presented to the jury; the defendant has a similar right with regard to defenses. Both plaintiffs and the City have a right not only to present evidence relating to the personal injury/nuisance claims but also advocate for proper instructions on such evidence to be considered by a jury. New trials are granted when a trial court fails to instruct on critical legal theories in a case resulting in reversible error when a jury is misled.

Both the plaintiffs and defendant herein have rights pursuant to both Okla. Const. Art. 2 § 19 and Okla. Const. Art. 7 § 15 to present evidence in support of their claims and defenses (such as the cap), and to have a jury instructed on those claims and defenses, and then have that jury return a general verdict.

¶50 Based upon the arguments presented by the plaintiffs, I conclude a $350,000 cap on noneconomic damages does not violate plaintiffs' right to a jury trial as guaranteed by Okla. Const. Art. 2 § 19 when the cap is construed and applied as a partial affirmative defense considered by a jury.

¶51 I conclude 23 O.S.2011 § 61.2 requiring a jury to make findings of fact on actual noneconomic economic damages without considering and applying an affirmative defense cap as to those damages has the effect of a special verdict which is prohibited by Okla. Const. Art. 7 § 15, and impermissibly removes the jury as the entity applying the law, through proper instructions, to a jury's determination of damages.

V. Okla. Const. Art. 2 §§ 6 & 7 Challenges

¶52 Plaintiffs argue Okla. Const. Art. 2 §§ 6 & 7 are violated by 23 O.S. 2011 § 61.2. These constitutional provisions state as follows.

The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice.

Okla. Const. Art. 2 § 6:

No person shall be deprived of life, liberty, or property, without due process of law.

Okla. Const. Art. 2 § 7:

Plaintiffs argue their access to courts (Art. 2 § 6) is violated because their access is "unequal" and is unconstitutionally burdened with a "clear and convincing" evidence standard required by the statute. Plaintiffs' argument based on due process (Art. 2 § 7) appears in footnote number 36 of their brief in chief. They invoke the equal protection component of state constitutional due process and argue those who suffer injuries in excess of the cap are treated unequally by receiving only a portion of their rightful compensation.

¶53 In John v. Saint Francis Hospital, Inc., the Court stated Art. 2, § 6 has three constitutional guarantees (1) access to the courts; (2) right-to-a-remedy for every wrong and every injury to person, property, or reputation; and (3) prohibition on the sale, denial, delay or prejudice of justice.[104] While the right-to-a-remedy component acts on the judiciary and not the Legislature,[105] the access-to-courts component acts on the legislature as well as the judiciary.[106] Plaintiffs state their access to courts is denied by the statute's requirement for a plaintiff to satisfy a "clear and convincing" evidence standard to lift the cap on noneconomic damages.

¶54 This Court has noted three common standards or quanta of proof: (1) preponderance of the evidence, (2) clear and convincing evidence, and (3) beyond a reasonable doubt.[107] The Court explained a preponderance-of-the-evidence standard is generally used in private disputes where the parties equally share the risk of error.[108] The clear-and-convincing standard is employed in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing by the defendant, where the interest at stake in those cases is deemed to be more substantial than mere loss of money, and some jurisdictions reduce the risk to the defendant of having his or her reputation tarnished erroneously by increasing the plaintiff's burden of proof.[109] Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegation sought to be established.[110]

¶55 Plaintiffs state the evidentiary standard "adds to the cost of obtaining a noneconomic damages award greater than the $350,000 cap, even though the additional compensation due is sufficiently proven, and thereby chills the filing of meritorious personal injury suits seeking such damages." Plaintiffs state the amount and quality of evidence necessary to sustain a result based upon a preponderance of evidence is less than that required to met a clear and convincing standard.[111] Plaintiffs cite a lower federal court case and some legal articles on the effect of a heightened pleading burden and its chilling effect on filing lawsuits,[112] and tie this concept to Zeier v. Zimmer, Inc., where the Court held a plaintiff's right to file an action in District Court could not be thwarted by a statute requiring plaintiff to obtain a pre-petition medical opinion and affidavit and thus making court access depend upon a plaintiff's financial status.[113] Plaintiffs' argument using this analogy creates an if-then propositional argument: if a heightened pleading requirement in other types of cases have had an impermissible burden on a plaintiff commencing an action with its subsequent successful conclusion, then a clear and convincing evidentiary standard which creates a burden on a successful conclusion for a plaintiff in the present case should be considered similarly impermissible. In summary, they argue the cap on noneconomic damages with the clear-and-convincing standard in section 61.2 impose a barrier to court access more expensive and burdensome than the unconstitutional affidavit of merit for initiating an action in a district court.

¶56 Plaintiffs also cite an author who concluded concerning Oklahoma's legislative tort reform: "By reducing plaintiffs' potential recoveries, and by enacting barriers to the filing and prosecution of tort claims, tort reforms make many potential cases uneconomical for plaintiffs' attorneys who normally operate on a contingency fee basis."[114] I assume, for the sole purpose of addressing the argument, the veracity of this statement concerning potential cases being "uneconomical for plaintiffs' attorneys" to commence.[115] This observation by the author is on the topic of legislative tort reform in Oklahoma in a general sense, and not on the specific operation of the clear-and convincing standard and whether that standard necessarily creates an unconstitutional burden on access to courts. Plaintiffs argue the clear-and-convincing standard carves out an impermissible subclass denying equality to plaintiffs who have noneconomic damages in excess of the statutory cap and are thereby not fully compensated for their injury.

¶57 The access-to-courts constitutional guarantee is intended to guarantee that the judiciary would be open and available for the resolution of disputes, but not to guarantee that any particular set of events would result in court-awarded relief.[116] The constitutional provision is not a guarantee to remove all burdens on either a party's ultimate successful recovery or ultimate successful defense. Again, assuming plaintiffs are correct that fewer tort actions are filed as a result of the cap on economic damages, then plaintiffs' challenge is asking this Court to (1) constitutionalize the view that tort law is for the purpose of compensating the individual and (2) make unconstitutional the long-recognized power of the Legislature to define a tort cause of action or adjust defenses in such actions.[117]

¶58 I would hold the cap on economic damages does not violate the access-to-courts component in Okla. Const. Art. 2 § 6.

¶59 Plaintiffs also make combined Art. 2 §§ 6 & 7 challenge to the clear-and-convincing standard and the cap on non-economic damages. The Due Process Section of the Oklahoma Constitution includes an equal protection element.[118] When an equal protection challenge is made because a statute creates different classes of people with different legal rights, a legal analysis will often discuss whether the statute's classification is underinclusive (statute includes too few people in its created class) or if the classification is overinclusive (too many people are included in the statutory class).[119] A mere overinclusiveness or underinclusiveness in statutory classification will not necessarily show a failure to satisfy constitutionality.[120] One well-known principle is that a legislature's authority to create or abolish a right or benefit does not mean that the legislature has the authority to create an unconstitutional condition related to that right or benefit. Our Article 2 § 7 analysis of class-creating legislation usually requires an adjudication whether a legitimate State interest exists and whether it is rationally related to the legislation.[121]

¶60 The clear-and-convincing standard has been used in Oklahoma for many types of proceedings including, but not limited to, adoption without consent or termination of a parental right,[122] an Indian Child Welfare Act noncompliant placement,[123] attorney's fee for self-representation,[124] punitive damages in a tort action,[125] conspiracy,[126] common-law marriage,[127] defamation,[128] fraud,[129] injunction,[130] termination of a temporary guardianship,[131] reformation of a contract or deed,[132] and professional discipline for a lawyer.[133] The use of the clear-and-convincing standard does not by itself show an unconstitutional circumstance, but the clear-and-convincing standard may be impermissible for a particular circumstance.[134] Of course, plaintiffs' argument is tied, in part, to the practice of a contingency fee basis in a negligence action where the evidentiary standard is used as opposed to the clear-and convincing standard without a contingency fee in many of these other types of cases.

¶61 The clear-and-convincing standard in 23 O.S.2011 § 61.2 is not tied merely to a cap on noneconomic damages, but also to a particular type of finding by a jury determining an increased level of culpability. The clear-and convincing evidence standard in 61.2 is used by a jury when determining if a defendant's acts or failures to act were (1) in reckless disregard for the rights of others, (2) grossly negligent, (3) fraudulent, or (4) intentional or with malice. Both the Legislature and this Court have recognized that public policy in Oklahoma requires distinguishing ordinary negligence as one category of wrongs from other categories including gross negligence and intentional conduct. For example the Legislature has tied specific types of wrongful conduct to awarding punitive damages,[135] and this Court has explained the public policy for distinguishing ordinary negligence from gross negligence and intentional conduct in the context of a contractual waiver of liability.[136] In Johnson v. Board of Governors of Registered Dentists of State of Okla., the Court observed the U.S. Supreme Court had stated a clear-and-convincing standard had been used in cases involving a jury's determination involving public opprobrium.[137]

¶62 Plaintiffs' challenge to the $350,000 cap in this context is predicated upon: (1) A claim plaintiffs possess a fundamental right to complete economic recovery in the face of contrary legislation defining a cause of action or defense contrary to that right; and (2) A claim no state interest exists in limiting lawsuits, or in the alternative if such an interest exists it cannot outweigh claimant's fundamental right in a complete recovery. Courts have expressly rejected the claim that the common law provided a complete legal remedy for every type of harm in the face of contrary statutes. This principle negates many of plaintiffs' claims. Approximately thirty years ago the Court explained an Art. 2 § 6 access-to-courts claim protects or attaches to a substantive right which has vested, and in the absence of the substantive or fundamental right strict scrutiny is not applied and a rational basis review is used to determine whether the challenged statute is rationally related to a legitimate government interest.[138]

¶63 Plaintiffs appear to agree the number of lawsuits is fewer due to 23 O.S.2011 § 61.2, and this is one of the state interests championed by defendant. Using a clear-and-convincing standard for a different type of culpability and treating a cap on noneconomic damages as a partial defense does not violate public policy; but is in agreement with that policy. Section 61.2 is supported by rationally-related state interests when no arbitrariness in the classification or deprivation of a fundamental right by operation of the statute has been implicated by plaintiffs.[139]

¶64 I would hold the cap on noneconomic damages and the clear-and-convincing standard in 23 O.S.2011 § 61.2 do not violate Okla. Const. Art. 2 § 6 or § 7.

VI. Okla. Const. Art. 4 § 1 Challenge

¶65 Plaintiffs argue section 61.2 violates Okla. Const. Art. 4 § 1, which states as follows.

The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others.

Plaintiffs argue (1) "judicial power" is the power to adjudicate a cause of action, (2) damages are an adjudicative fact, (3) § 61.2 "purports to legislate a conclusive, irrefutable presumption that noneconomic damages a plaintiff has suffered can never exceed the legislatively predetermined amount of $350,000, regardless of the jury's determination, and (4) § 61.2 "cripples the free-exercise of decision-making powers reserved to the judiciary." Plaintiffs argue the statute usurps the inherent power of the judiciary to regulate excessive awards by a remittitur, and the statute is imposing a legislative remittitur. Plaintiffs also argue a reduction of damages without consent or a new jury trial cannot be countenanced where the right to a jury is present.

¶66 The power to adjudicate is the power to determine questions of fact or law framed by a controversy and this power is exclusively a judicial power.[140] I have construed the $350,000 cap on noneconomic damages as a partial affirmative defense within the power of the Legislature to create when defining an element to a tort cause of action, and not a legislative finding of fact on damages actually sustained by plaintiffs. I state herein the cap on noneconomic damages and whether it should be lifted must be a decision of a properly instructed jury. Section 61.2 does not violate Okla. Const. Art. 4 § 1 when this construction of the statute is considered.

¶67 I would hold 12 O.S. 2011 § 61.2 does not violate Okla. Const. Art. 4 § 1 due to my construction of § 61.2 herein.

VII. Severability

¶68 I have determined the § 61.2 procedure is unconstitutional when it keeps knowledge of law from a jury relating to an issue the jury is charged with deciding as part of its constitutionally specified role. Is this procedure severable from the statutory cap on actual noneconomic damages? Yes, of course it is. Plaintiffs argue the unconstitutional provisions of § 61.2 are not severable from the other parts of the statute and the Court should hold the entire statute unconstitutional. The argument unconstitutional provisions are severable and the constitutional portions should survive judicial review and be enforced is correct.

¶69 The Legislature requires a severability analysis although its enactment does not expressly include a severability provision.[141] Plaintiffs invoke a supposed anti-jury bias by the Legislature and invite us to speculate whether a legislature would create a cap if the jury was the entity responsible for implementing a cap on damages, and upon such combined supposition and speculation this Court should conclude the Legislature would not create a cap. Analysis of this nature is not the legal test for severability. This Court is invited to examine the law in other states to see if juries implement a cap in those jurisdictions, and again this is not the well-accepted legal test for severability.

¶70 The Court is required to ask if the $350,000 cap on actual noneconomic damages is capable of enforcement apart from the unconstitutional procedure of keeping applicable law from the eyes of the jury. The severability question is whether the cap on damages is capable of enforcement by properly instructed juries.[142] Answering this question requires the Court to give consideration to whether the cap relies on the severed unconstitutional portion of the statute for its necessarily required meaning or enforcement.[143] Does the statutory cap get its necessarily required meaning or enforcement by an unconstitutional procedure? No, it does not, because a cap on damages is capable of being enforced by a properly instructed jury independently from the unconstitutional procedure of removing the determination of damages from the jury.

¶71 In Oklahoma, past practice was that a jury could be informed of, and apply, a cap on damages. Historically, a few items were required to be in a judicial record for a final adjudication. Examples include plaintiff applying to the correct court, plaintiff's name stated on the face of the record, defendant's name also stated, a description of the wrong complained of, and the amount of damages alleged by plaintiff.[144] As to this last element, in Oklahoma our statutes at one time required a petition in a negligence action alleging personal injuries to plead an amount of damages.[145] The amount of pled damages acted as a cap on damages as a matter of law, and it was not error to instruct a jury on that cap. For example, in 1929 the Oklahoma Supreme Court explained the trial court did not err when giving an instruction limiting the amount the jury could award for personal injury damages to $2,999.00 when that was the amount of damages claimed by the plaintiff.[146] Our opinion agreed with what the Court stated in a Court Syllabus fifteen years earlier, reversible error does not occur when a jury is instructed the damages awarded shall not exceed the aggregate sum sued for, i.e., damages may not be awarded in excess of a cap.[147] Of course, our practice also followed the common law which allowed an ad damnum to be amended before trial and a verdict in excess of the ad damnum to be corrected by remittitur.[148]

¶72 Abundant authority exists for noting no error necessarily occurs when informing a jury that a cap exists on damages the jury may award. In 1958 the U. S. Court of Appeals for the Ninth Circuit explained two U.S. Supreme Court opinions and one from the Ninth Circuit holding it was not error for a court to state to a jury the specific amount of damages requested by a plaintiff "provided other instructions were given instructing the jury that the amount mentioned was merely a limit beyond which they could not go."[149] In 1974 the U. S. Court of Appeals for the Tenth Circuit also noted this principle stating "the federal cases addressing this issue have held that it is not improper for the trial judge to advise the jury that the damages awarded may not exceed the specified amount in the prayer, provided it is made clear that the sum is not suggestive of a proper award, but is a limit beyond which the jury cannot go."[150]

¶73 The cap on damages in the matter before the Court is based upon an amount in a statute versus an amount in a pleading, but both the historically-recognized pleading-cap and the modern statutory-cap were, and are, impressed upon, or control, the jury's discretion by operation of law. There is no legally substantive difference to distinguish one type of cap on damages from the other for the purpose of a jury's enforcement. There is no reason to place the historically-recognized cap within a jury's ability to comprehend and properly enforce and remove the modern statutory cap outside the scope of a jury's ability to comprehend and enforce according to a proper jury instruction.

¶74 There are those who appear to have a low view of the abilities of people who serve on juries. They claim a jury informed of a cap on damages will not follow the law, and that a jury will impermissibly attempt to offset a cap with an increase on damages of a different type.[151] The ideological tension between informing a jury of the cap and requiring its nondisclosure to a jury is observed in an opinion from the State of Maine and a Justice from that State commenting on jury instructions. In 1993 a Maine court stated a trial court did not err when informing the jury (1) the then statutory maximum award or cap for loss of comfort and society under the state's wrongful death statute was $50,000, and (2) the jury could not shift damages in excess of the cap from one category of damages to another.[152] But a mere twelve years later in 2005 a jury instruction manual for that state written by an individual Justice of the Maine Supreme Judicial Court includes no instruction on damage caps and opines "the better choice appears to be that juries should not be told about caps . . . [because] [d]isclosure of caps or multipliers risks diverting the jury's attention from issues they must decide to specific numbers, calculations or compromise findings generated by discussion of the caps or multipliers."[153]

¶75 Oklahoma law has long-recognized that while the determination of the amount of damages is a question for the jury,[154] the amount actually determined by the jury must be within the limits of the evidence presented,[155] and if a jury's determination of damages is unsupported by the evidence, then a new trial may be ordered by a trial judge.[156] In summary, for decades Oklahoma juries could be informed that Oklahoma law limited or capped damages, and if a jury did not follow the law concerning a cap on damages a new trial or remittitur could be ordered by a trial judge. The people of Oklahoma who serve on juries are more than capable of determining damages in specific amounts. They are more than capable of deciding the matters before them based upon the evidence presented to them and the jury instructions they receive. The judges of our District Courts are perfectly capable of assessing whether a jury's verdict exceeds the evidence and the law.

¶76 Plaintiffs argue the cap on damages is not severable because it, "standing alone, would be incomplete and incapable of being executed in accordance with legislative intent." This argument pays no legal traction due to the history of juries routinely applying caps on damages. Discussion is made challenging the statutory language of nondisclosure as part of an anti-jury bias that makes the legislation nonseverable. The improper ad hominem nature of this claim is sufficient to show it should not be used for the Court's severability analysis. Actions, in right circumstances, can be a basis for attributing goals or motives to an agent, but here an allegation of bias improperly replaces a capable-of-enforcement argument with a bias argument in an attempt to show nonseverability.[157] The Oklahoma Supreme Court presumes public officials perform their public duties in good faith and this presumption includes the Oklahoma Legislature.[158]

¶77 The good faith of the legislative officials has been attacked by a suggestion that the legislation at issue is a form of duplicitous social economic class protectionism for the purpose of conferring an economic benefit on certain defendants at the expense of certain plaintiffs; and as such the Legislature failed to follow the concept of a free market economy as explained in the writings of certain economists and political philosophers. This suggestion is wholly inappropriate in this forum. The Oklahoma Supreme Court has recently explained a statute regulating economic affairs is not unconstitutional merely because an economic detriment or benefit is created by a statutory classification: "The very nature of such statutes is to alter economic benefits with or without corresponding economic detriments."[159] The Court does not Lochnerize its analysis by making subjective moral or political preferences rather than using values authoritatively codified in the Constitution.[160] Whether the Legislature faithfully followed the writings of Milton Friedman, Russell Kirk, or any other economist/philosopher does not raise a legal issue pertinent to whether the Legislature followed a value codified in the Constitution.

¶78 In summary, an Oklahoma jury is capable of enforcing Oklahoma's § 61.2 cap on actual noneconomic damages apart and separate from the unconstitutional procedure of § 61.2 requiring nondisclosure of the cap to the jury. Indeed, a properly invoked cap is required to be enforced by the jury upon proper jury instructions. The constitutionally specified role of an Oklahoma jury is beyond the Legislature's power to alter.

¶79 However, the Legislature does have the Okla. Const. Article 5 power to define and alter common-law actions when the exercise of that power does not otherwise violate some other provision of the Oklahoma or Federal Constitutions. This dichotomy between the absence of legislative power to alter the constitutional function of a jury and the presence of legislative power to alter an Oklahoma cause of action demonstrates why separation of the language in § 61.2 for enforcement by a jury is not only possible, but required.

VIII. Conclusion

¶80 I have concluded plaintiffs' challenges to 23 O.S. § 61.2 have not met their burden except in one instance, the constitutional function of the jury. None of plaintiffs arguments show the § 61.2 cap on damages is unconstitutional. I have concluded the unconstitutional language is severable from the cap on actual noneconomic damages. I would reverse the judgment and remand for a new trial with a properly instructed jury.

FOOTNOTES

[1] Parker v. Elam, 1992 OK 32, 829 P.2d 677, 682 (a judgment, reversed and remanded, stands as if no trial has been held on remand from a reversed judgment; and the parties are entitled to introduce additional evidence, supplement the pleadings, expand issues, unless expressly or specifically limited by the appellate proceedings in error).

[2] Okla. Const. Art. 5 § 36: "The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever."

[3] Movants to Quash Multicounty Grand Jury Subpoena v. Dixon, 2008 OK 36, ¶ 22, 184 P.3d 546, 553 ("The authority of the Legislature extends to all rightful subjects of legislation not withdrawn by the Constitution or in conflict therewith."); In re Flynn's Estate, 1951 OK 310, 237 P.2d 903, 905 ("The authority of the Legislature extends to all rightful subjects of legislation not withdrawn by the Constitution or in conflict therewith.").

[4] Torres v. Seaboard Foods, LLC, 2016 OK 20, ¶ 17, n. 14, 373 P.3d 1057, 1066.

[5] In re Detachment of Municipal Territory from City of Ada, Okla., 2015 OK 18, ¶ 7, 352 P.3d 1196, 1199.

[6] Fair School Finance Council, Inc. v. State, 1987 OK 114, 746 P.2d 1135, 1149.

[7] Okla. Const. Art. 23 § 7: "The right of action to recover damages for injuries resulting in death shall never be abrogated, and the amount recoverable shall not be subject to any statutory limitation, provided however, that the Legislature may provide an amount of compensation under the Workers' Compensation Law for death resulting from injuries suffered in employment covered by such law, in which case the compensation so provided shall be exclusive, and the Legislature may enact statutory limits on the amount recoverable in civil actions or claims against the state or any of its political subdivisions."

[8] 1983 OK 82, 672 P.2d 1153.

[9] This issue relating to statutory notice for an individual's viable statutory claim (i.e., no sovereign immunity in effect for particular claim) coexisting with a longer limitations period for a statutory wrongful death action was noted by the Oklahoma Bar Association in 1985. The New Oklahoma Governmental Tort Claims Act Handbook, 30 (Oklahoma Bar Association, 1985) (explaining 85 O.S.Supp.1985 § 156 (F) and noting Article 23, Section 7 as amended by legislative referendum on April 30, 1985, authorizes the legislature to limit recoveries in wrongful death actions against the state and its political subdivisions).

Compare 51 O.S.Supp.1985 § 156(F) stating in part: "When the claim is one for death by wrongful act or omission, notice may be presented by the personal representative within one (1) year after the alleged injury or loss resulting in such death" with 12 O.S. 1981 § 1053 (A) stating in part: "When the death of one is caused by the wrongful act or omission of another . . . The action must be commenced within two (2) years."

Hammons v. Muskogee Medical Center Authority, 1985 OK 22, 697 P.2d 539, 542 (if no governmental or political subdivision statutory immunity expressly protects the defendant from liability, then Art. 23 § 7 protects the plaintiff's right to proceed to recover for injuries resulting in death).

[10] Wilson v. Gipson, 1988 OK 35, 753 P.2d 1349, 1354 -1355.

[11] Brookshire v. Burkhart, 1929 OK 428, 283 P. 571, 577 (time specified in a wrongful death statute for such an action is a limitations period and not a limitation on the right).

[12] Estrada v. Port City Properties, Inc., 2011 OK 30, ¶ 35, 258 P.3d 495, 508.

[13] Denco Bus Lines v. Hargis, 1951 OK 11, 229 P.2d 560, 562.

23 O.S.2011 § 61: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not."

[14] Deep Rock Oil Corp. v. Griffeth, 1951 OK 11, 58 P.2d 323, 325, citing Van Sickle v. Franklin, 1917 OK 100, 162 P. 950, and Sackett v. Rose, 1916 OK 2, 154 P. 1177, L.R.A.1916D, 820.

[15] Deep Rock Oil Corp. v. Griffeth, 1951 OK 11, 58 P.2d 323, 325-326, citing Missouri, K. & T. Ry. Co. v. West, 1913 OK 510, 134 P. 655, appeal dismissed 232 U.S. 682, 34 S.Ct. 471, 58 L.Ed. 795 (1914).

[16] Denco Bus Lines v. Hargis, 1951 OK 11, 229 P.2d 560, 562.

[17] Gibby v. Hobby Lobby Stores, Inc., 2017 OK 78, ¶ 9, 404 P.3d 44 (generally, a person possesses no vested right to a remedy or procedure); Trinity Broadcasting Co. v. Leeco Oil Co., 1984 OK 80, 692 P.2d 1364, 1367 (a statute of limitations is procedural and no right vests in the statute until the cause of action is barred by the statute); Oklahoma Water Resources Bd. v. Central Okla. Master Conservancy Dist., 1968 OK 73, 464 P.2d 748, 756 (no one has a vested right in any particular mode of procedure for the enforcement or defense of his rights).

[18] Loftis v. Multiple Injury Trust Fund, 2003 OK CIV APP 30, ¶ 11, 67 P.3d 924, 926 (Approved for Publication by Supreme Court) (a person has a vested right to a remedy when the cause of action accrues), quoting Rivas v. Parkland Manor, 2000 OK 68, 12 P.3d 452, 458 (recognized as superseded by statute on other grounds); Evans & Associates Utility Services v. Espinosa, 2011 OK 81, 264 P.3d 1190; Loyal Order of Moose, Lodge 1785 v. Cavaness, 1977 OK 70, 563 P.2d 143, 146 (a right to a remedy will not vest until a cause of action vests or accrues); Anagnost v. Tomecek, 2017 OK 7, ¶ 15, 390 P.3d 707 (a vested right to a particular remedy will not vest when the legislation is a procedural change that affects the remedy only, and not the right), quoting Forest Oil Corp. v. Corp. Comm'n of Oklahoma, 1990 OK 58, ¶ 11, 807 P.2d 774. Cf. Winfree v. Northern Pacific Ry. Co., 227 U.S. 296, 33 S.Ct. 273, 57 L.Ed. 518 (1913) (a new remedy could not be used when it created a liability and changed a defense not present when the cause of action accrued); American Dredging Co. v. Miller, 510 U.S. 443, 454, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994) (contrasting affirmative defenses, such as contributory negligence, which eliminate liability and involve a substantive right versus forum non conveniens which does not bear upon the substantive right to recover) (per Scalia, J., for the Court, Part II-B).

[19] See my conclusion herein that section 61.2 acts to limit the scope of damages and is an alteration to one element to a tort cause of action specified in section 61.2. Changing the damages available for a cause of action acts on the cause of action itself and is not a remedial statute. See also Anagnost v. Tomecek, 2017 OK 7, n. 26, 390 P.3d 707, 712 citing Thomas v. Cumberland Operating Company, 1977 OK 164, ¶ 10, 569 P.2d 974 ("under the great weight of authority, the measure and elements of damages are matters pertaining to the substance of the right and not to the remedy").

[20] Okla. Const. Art. 2 § 19:

The right of trial by jury shall be and remain inviolate, except in civil cases wherein the amount in controversy does not exceed One Thousand Five Hundred Dollars ($1,500.00), or in criminal cases wherein punishment for the offense charged is by fine only, not exceeding One Thousand Five Hundred Dollars ($1,500.00). Provided, however, that the Legislature may provide for jury trial in cases involving lesser amounts. Juries for the trial of civil cases, involving more than Ten Thousand Dollars ($10,000.00), and felony criminal cases shall consist of twelve (12) persons. All other juries shall consist of six (6) persons. However, in all cases the parties may agree on a lesser number of jurors than provided herein.

In all criminal cases where imprisonment for more than six (6) months is authorized the entire number of jurors must concur to render a verdict. In all other cases three-fourths ( ¾ ) of the whole number of jurors concurring shall have power to render a verdict. When a verdict is rendered by less than the whole number of jurors, the verdict shall be signed by each juror concurring therein.

[21] This Art. 2 § 19 argument by plaintiffs does not make a claim that $350,000 is a constitutionally insufficient and arbitrary amount. See the discussion herein relating to Okla. Const. Art. 2 §§ 6,7.

[22] See, e.g., Francis M. Burdick, The Law of Torts, 486 (Banks & Co., Albany, N.Y., 1906) (while many of Burdick's examples have been changed in the last 100 years of jurisprudence, it is instructive to note its publication contemporaneous to the Oklahoma Constitution and listing as many as twenty categories of harms in fact without a corresponding tort, and including as examples, acts of the state, arrest of innocent persons, acts with plaintiff's assent, accident, business competition, defense of self, defense of family, defense of property, fright, police power, acts of an incompetent, certain officers, legalized nuisances, mental anguish, arising from plaintiff's illegal conduct, and others).

[23] Black's Law Dictionary, 393 (6th ed. 1990), defines damnum absque injuria as follows: "Loss, hurt, or harm without injury in the legal sense; that is, without such breach of duty as is redressible by a legal action. A loss or injury which does not give rise to an action for damages against the person causing it." See Spiek v. Michigan Dept. of Transportation, 456 Mich. 331, 572 N.W. 2d 201, 208 (quoting Black's Law Dictionary, 6th ed.). See also Southwestern Bell Telephone, L.P. v. Harris County Toll Road Authority, 52 Tex. Sup. Ct. J. 579, 282 S.W.3d 59, n. 3 (2009) ("Damnum absque injuria, or damage sine injuria, means a '[l]oss or harm that is incurred from something other than a wrongful act and occasions no legal remedy.'") quoting Black's Law Dictionary, 420--21 (8th ed.2004).

[24] See, e.g., Morgan v. Norfolk S. R. Co., 98 N.C. 247, 3 S.E. 506 (1887) (harm in fact was damnum absque injuria when caused by noise reasonably necessary to operation of railway); Cook v. Chapman, 41 N.J. Eq. 152, 14 Stewart 152, 2 A. 286, 291 (1886) ("There is such a thing known to the law as damage without injury, and this occurs where damage results from an act or omission which the law does not esteem an injury."); Jacobus v. Colgate, 217 N.Y. 235, 111 N.E. 837, Ann.Cas.1917E, 369 (1916) (Judge Cardozo writing for the court and explaining plaintiff's action based upon a trespass in another state, although cognizable when filed in New York pursuant to statute, the action was not authorized in 1882 when the trespass occurred (or until the 1913 statute), and while a party had "a moral right to redress" "he had no legal right to redress" until creation of the statute which had to be treated as prospective).

[25] See, e.g., Ridings v. Maze, 2018 OK 18, ¶¶ 11-12, 414 P.3d 385, 838-839 (when the basis for liability rests solely on the fact that plaintiffs witnessed an accident, and the basis does not include an allegation a defendant physically injured them (i.e., they possess the status of "direct victims"), then plaintiffs have no basis for recovery and their claims for emotional distress).

[26] Cf. St. Paul Fire & Marine Ins. Co. v. Getty Oil, 1989 OK 139, 782 P.2d 915, 919 (Okla. Const. Art. 2, § 6 does not promise a remedy to every complainant, but requires a complainant must be given access to a court if he or she has suffered a wrong which is recognized in the law; and any other interpretation would render meaningless Okla. Const. Art. 5, § 36).

[27] Kyle Graham, Why Torts Die, 35 Fla. St. U. L. Rev. 382, n. 151 (2008) (some torts die because they are attacked "as being out of step with the perceived goals of tort law, such as the allocation of measured compensation to injured parties"), citing John C.P. Goldberg, Twentieth-Century Tort Theory, 91 Geo. L.J. 513, 525 (2003) ("the function of tort law is to compensate and deter" and tort law "has moved from being an institution for the adjudication of private wrongs to an institution that empowers judges and juries to legislate for the public good"); Jeffrey O'Connell & Christopher J. Robinette, The Role of Compensation in Personal Injury Tort Law: A Response to the Opposite Concerns of Gary Schwartz and Patrick Atiyah, 32 Conn. L. Rev. 137, 139 (1999) (a mixed theory of tort law must include not only deterrence and corrective justice but also compensation).

[28] Lockhart v. Loosen, 1997 OK 103, ¶ 7, 943 P.2d 1074, 1083. See also Lynn v. Shaw, 1980 OK 179, 620 P.2d 899, 901 (three types of actions involving interference with the husband's interests, as well as a wife's under 32 O.S. 1971 § 15 of the Married Women's Act, renumbered by Laws 1989 c. 333, § 2, eff. Nov. 1, 1989, as 43 O.S. § 214, "enticement, criminal conversation, and alienation of affections;" and concluding tort of seduction includes criminal conversation); Quinn v. Walsh, 49 Mass.App.Ct. 696, 732 N.E.2d 330, n. 9, 334 (2000) (damages in connection with such actions such as criminal conversation and alienation of affection have derisively been called heart balm) citing Prosser & Keeton, Torts § 124, at 929 (5th ed. 1984).

[29] See, e.g., Kohler v. Campbell, 1953 OK 399, 258 P.2d 1178 (judgment for plaintiff in suit based on alienation of affections affirmed by the Court).

[30] 76 O. S. Supp.1976 § 8.1: "From and after the effective date of this act, the alienation of the affections of a spouse of sound mind and legal age or seduction of any person of sound mind and legal age is hereby abolished as a civil cause of action in this state."

[31] Davis Oil Co. v. Cloud, 1986 OK 73, 766 P.2d 1347.

[32] Numerous examples could be used to show legislative alteration of liability. See, e.g., Sudbury v. Deterding, 2001 OK 10, ¶ 19, 19 P.3d 856, 860 (statutorily increasing potential damages from three times the actual damages to include up to ten times the actual damages altered the liability of the defendant and was not merely remedial).

[33] Lafalier v. Lead-Impacted Communities Relocation Assistance Trust, 2010 OK 48, ¶ 19, 237 P.3d 181, 190 (Okla. Const. Art 5 § 36 vests the Legislature with the authority to define what constitutes an actionable wrong, provided of course, that such legislation may not disturb a vested right) quoting St. Paul Fire & Marine Insurance Co. v. Getty Oil Co., 1989 OK 139, 782 P.2d 915, 918.

Okla. Const. Art. 5, § 36: "The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever."

[34] Torres v. Seaboard Foods, LLC, 2016 OK 20, ¶ 22, 373 P.3d 1057, 1068-1069.

[35] The burden to show the presence of a constitutional flaw in a statute is on the party who asserts its unconstitutionality. Torres v. Seaboard Foods, LLC, 2016 OK ¶ 17, n. 16, 373 P.3d at 1067, citing CDR Systems Corp. v. Oklahoma Tax Commission, 2014 OK 31, ¶ 10, 339 P.3d 848, 852, quoting Thomas v. Henry, 2011 OK 53, ¶ 8, 260 P.3d 1251, 1254. In re Initiative Petition No. 397, State Question No. 767, 2014 OK 23, ¶ 39, 326 P.3d 496, 512.

[36] Rogers v. Quiktrip Corp., 2010 OK 3, ¶ 7, 230 P.3d 853, 857-858 (generally, public rights arise between the government and others, while the liability of one individual to another is considered to involve private rights where the public interest is not involved).

This clash in core values is described in Alexandra B. Klass, Tort Experiments in the Laboratories of Democracy, 50 Wm. & Mary L. Rev. 1501, 1508-1509 (2009), where the author describes "two camps" of tort scholars: (1) those who view tort law as merely a branch of the public regulatory state with a goal of identifying and achieving the most cost-effective mix of precaution and injury, and also include those who see tort law as a mechanism to distribute losses, provide compensation to victims of accidents, further social justice, and punish corporate misconduct; and (2) those who view tort as private law to redress private wrongs and obtain corrective justice.

[37] See, e.g., Sebelius v. Cloer, 569 U.S. 369, 372, 133 S.Ct. 1886, 185 L.Ed.2d 1003 (2013) ("The NCVIA [National Childhood Vaccine Injury Act] establishes a no-fault compensation program designed to work faster and with greater ease than the civil tort system.") (internal quotes omitted and explanation added); 42 U.S.C.A. § 300aa-15(e)(1) (the Vaccine Act provides: "For actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000."); Maxwell v. Sprint PCS, 2016 OK 41, ¶ 25, 369 P.3d 1079 (The Administrative Workers' Compensation Act and its predecessor the Workers' Compensation Code relies on the employee relinquishing a common-law right to bring an action in district court and the employer relinquishing certain common-law defenses as part of the statutory no-fault compensation scheme.); Hughes Drilling Co. v. Crawford, 1985 OK 16, 697 P.2d 525 (exclusivity of workers' compensation remedy discussed).

[38] Robert L. Rabin, The Renaissance of Accident Law Plans Revisited, 64 Md. L. Rev. 699, 708 (2005) (Professor Rabin stated the Vaccine Compensation Fund arose out of "a crisis atmosphere" in which "the individual rights perspective of tort yielded to a collective, insurance-based model of compensation.").

[39] See, e.g., Leonard J. Nelson, III, David J. Becker, and Michael A. Morrisey, Medical Liability and Health Care Reform, 21 Health Matrix 443, 462 (2011) (discussing insurance premium volatility and damages caps with a suggestion "there is greater insurance market stability in states with caps on non-economic damages").

[40] Scott DeVito & Andrew Jurs, An Overreaction to a Nonexistent Problem: Empirical Analysis of Tort Reform from the 1980s to 2000s, 3 Stan. J. Complex Litig. 62, 103-09 (2015) (finding that after a tort reform damages cap is removed, there is not a rebound effect and filings continue to decline).

[41] Yotam Kaplan, In Defense of Compensation, 70 Ala. L. Rev. 573, 587 (2018).

[42] L.D.G., Inc. v. Brown, 211 P.3d 1110 (Alaska 2009) (Court determined a party's right to a trial by jury, right to equal protection, and the right to jury fact-finding were not violated by a noneconomic damages cap in the amount of $400,000 or the injured person's life expectancy in years multiplied by $8,000, whichever was greater, for damages arising out of a single injury or death.).

[43] Kirkland v. Blaine County Med. Ctr., 134 Idaho 464, 471, 4 P.3d 1115 (2000) (cap on noneconomic damages imposed is simply a modification of a common law remedy and does not infringe on the right of a jury to decide cases, or constitute special legislation, or arbitrarily discriminate between victims based upon severity of injury, or violate separation of powers principles, or infringe the judiciary's power of remittitur).

[44] Miller v. Johnson, 295 Kan. 636, 289 P.3d 1098 (2012) ($250,000 cap on noneconomic damages does not violate separation of powers, right to trial by jury or right to a remedy or equal protection).

[45] Gourley ex rel. Gourley v. Nebraska Methodist Health System, Inc.1. Gourley ex rel. Gourley v. Nebraska Methodist Health System, Inc., 265 Neb. 918, 663 N.W.2d 43 (Neb. 2003) ( statutory cap of $1,250,000 on damages recoverable in medical malpractice action did not constitute special legislation, or violate equal protection, or violate the open court's guarantee, or a right to a jury trial, or take property for public use without compensation, or act as a legislative remittitur).

[46] Simpkins v. Grace Brethren Church of Delaware, 149 Ohio St.3d 307, 2016-Ohio-8118, 75 N.E.3d 122 (2016) (French, J., with Kennedy, J., concurring, and Lanzinger, J., concurring in judgment only and not in constitutional analysis, and stating a cap on noneconomic damages did not violate a right to trial by jury, right to remedy, right to due process, or a right to equal protection).

[47] Judd v. Drezga, 103 P.3d 135 (Utah 2004) (statutory cap of $250,000 on noneconomic damages did not violate constitutional open courts clause, equal protection, due process, right to a jury trial or a separation of powers doctrine).

[48] Pulliam v. Coastal Emergency Serv., Inc., 257 Va. 1, 509 S.E. 2d 307, 311-312 (1999) (cap on damages varying over time from $1.5 million in 1999 to $2.95 million in the year 2030 (Va.Code Ann. § 8.01-581.15, amended 2011) does not violate due process, right to a jury trial, separation of powers, prohibition on special legislation, or equal protection), reaffirming the court's previous holding in Etheridge v. Medical Center Hospitals, 237 Va. 87, 376 S.E.2d 525 (1989).

[49] Mayo v. Wisconsin Injured Patients and Families Compensation Fund, 2018 WI 78, ¶¶ 5-7, 914 N.W.2d 678, 684-685 (2018) (statutory cap of $750,000 on noneconomic damages was not unconstitutional when a state comprehensive system required each health care provider to maintain liability coverage in the amount of one million dollars per claim, three million dollars for all claims in a given policy year, and a fund provided payments after a mandatory liability coverage was exceeded, and where the medical providers were not personally liable for medical malpractice), overruling Ferdon ex rel. Petrucelli v. Wisconsin Patients Compensation Fund, 284 Wis.2d 573, 701 N.W.2d 440 (2005).

[50] Johnson v. St. Vincent Hosp., Inc., 273 Ind. 374, 404 N.E.2d 585 (1980), overruled on other grounds, In re Stephens, 867 N.E.2d 148 (Ind. 2007).

[51] Indiana's Medical Malpractice Act, applicable to acts of malpractice after June 30, 1975, provided medical providers a $250,000 limitation on medical malpractice liability until July 1, 2017, and now specifies a $400,000 limit which will increase to $500,000 on June 30, 2019. Ind. Code § 34-18-14-3.

The Indiana Patient's Compensation Fund provides compensation for damages in excess of the required malpractice policy limits. Ind. Code § 34-18-14-3 ($500,000 before 1990; $750,000 after December 31, 1989 and before July 1, 1999; $1,250,000 between June 30, 1999 and July 1, 2017; $1,650,000 between June 30, 2017 and July 1, 2019; and $1,800,000 for an act of medical malpractice after June 30, 2019); McDaniel v. Robertson, 83 N.E.3d 765 (Ind. Ct. App. 2017) (discussing procedure for liability of the Patient's Compensation Fund after settlement with provider and upon payment of malpractice policy limits).

[52] Carol A. Crocca, Validity, Construction, and Application of State Statutory Provisions Limiting Amount of Recovery in Medical Malpractice Claims, 26 ALR5th 245 (1995).

[53] Compare Schmidt v. Ramsey, 860 F.3d 1038, 1048-1049 (8th Cir. 2017) cert. denied sub nom. S. S. ex rel. Schmidt v. Bellevue Med. Ctr. L.L.C., ___ U.S. ___, 138 S. Ct. 506, 199 L.Ed2d 386 (2017) (discussing capped damages, substitute remedy (quid pro quo), and the Court's opinion in Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978), for the proposition that a person has no property or vested interest in any rule of the common law), Carlson v. Green, 446 U.S. 14, 18-19, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (discussion of Congress providing an alternative remedy as a substitute for a claim based upon deprivation of a constitutional right), Stallings v. Oklahoma Tax Com'n, 1994 OK 99, 880 P.2d 912, 918 (a pre-deprivation or post-deprivation remedy is a constitutionally sufficient remedy for a claim based upon an unconstitutional tax); Davis Oil Co. v. Cloud, 1986 OK 73, 766 P.2d 1347, 1350 (approving the principle that no person has a vested right in a rule of law providing a common law defense); Miller v. Johnson, 295 Kan. 636, 289 P.3d 1098, 1112-1118 (2012) (a quid pro quo analysis is proper to determine whether legislature properly exercised power to modify a right to jury trial).

A comprehensive statutory public interest scheme may involve a quid pro quo alteration of legal rights/liabilities. See, e.g., Waltrip v. Osage Million Dollar Elm Casino, 2012 OK 65,¶ 11, 290 P.3d 741 (workers' compensation is the product of a quid pro quo); Young v. Station 27, Inc., 2017 OK 68, ¶ 20, 404 P.3d 829 (workers' compensation statutes are enacted within the police power of the state to accomplish public policy goals based upon public interests).

A legal duty giving rise to liability corresponds to a correlative legal right secured by a legal remedy. Hensley v. State Farm Fire and Casualty Company, 2017 OK 57, n. 17, 398 P.3d 11, citing Silver v. Slusher, 1988 OK 53, n. 28, 770 P.2d 878, 884; W. Hohfeld, Fundamental Legal Conceptions, 78 (1923) (explaining a right may have a correlative negative or positive legal duty based upon the right at issue), and Leake, Law of Property in Land, 1-2 (1st ed., 1874).

[54] Smith v. Department of Ins., 507 So.2d 1080 (Fla.1987) (A per curiam opinion, Shaw, Grimes, and Kogan, JJ., concurring, and Overton, Acting C.J., specially concurring) (A cap of $450,000 on noneconomic damages unconstitutionally denied plaintiffs access to court as that right related to a right to a jury trial when the statutory cap was not combined with either (1) a statutory reasonable alternative remedy or commensurate benefit for plaintiffs, or (2) legislative showing of (a) overpowering public necessity for the abolishment of the right to damages in excess of the cap and (b) no alternative method of meeting such public necessity; but the cap did not violate a separation of powers principle.).

See also Estate of McCall v. U.S., 134 So.3d 894, 901 (2013) (plurality opinion by Lewis, J., with Labarga, J., concurring; Pariente, Quince, and Perry, JJ., concurring in result) (In a wrongful death action the statutory caps on noneconomic damages in the amount of $500,000 and 1,000,000 involving death violate equal protection because the caps impose unfair and illogical burdens on injured parties when an act of medical negligence gives rise to multiple claimants), citing St. Mary's Hospital, Inc. v. Phillipe, 769 So.2d 961 (Fla.2000) (aggregate caps or limitations on noneconomic damages violate equal protection guarantees under the Florida Constitution when applied without regard to the number of claimants entitled to recovery).

[55] Lebron v. Gottlieb Memorial Hospital, 237 Ill. 2d 217, 341 Ill.Dec. 381, 930 N.E.2d 895 (2010) ($1,000,000 hospital cap and $500,000 physician cap violated separation of powers clause by acting as a legislative remittitur and encroaching on a fundamental judicial prerogative).

[56] Knowles ex rel. Knowles v. United States, 1996 SD 10, ¶¶ 31-33, 544 N.W.2d 183, 191 (cap on all damages in the amount of $1,000,000 violates due process by dividing medical claimants into two classes unconstitutional without sufficient reason even if the existence of an insurance crisis would support a $500,000 cap on noneconomic damages).

[57] Sofie v. Fibreboard Corp., 112 Wash.2d 636, 771 P.2d 711, 720--21 (1989) (en banc) modified on other grounds, 780 P.2d 260 (1989) (a cap on noneconomic damages violated a party's right to a jury trial).

[58] Watts v. Lester E. Cox Medical Centers, 376 S.W.3d 633, 636 (Mo. en banc 2012) (Court held the statutory cap on noneconomic damages was unconstitutional because when the state constitution was adopted in 1820 a jury had a constitutionally protected purpose to determining the amount of damages sustained by an injured party, and the cap violated a party's right to trial by jury.), overruling Adams By and Through Adams v. Children's Mercy Hosp., 832 S.W.2d 898, 907 (Mo. en banc 1992); Lewellen v. Franklin, 441 S.W. 3d 136 (Mo. en banc 2014) (cap on punitive damages to $500,000 or five times the amount of the judgment did not violate plaintiff's rights to trial by jury or due process); Dieser v. St. Anthony's Medical Center, 498 S.W.3d 419, 434 (2016) (stating post-judgment interest has never been assessed by a jury at common law).

[59] Lucas v. United States, 757 S.W.2d 687 (Tex.1988) ($500,000 caps on noneconomic damages violated open courts provision of state constitution); Watson v. Hortman, 844 F. SupP.2d 795 (E.D. Tex. 2012) (after a state constitutional amendment the court rejected contention the noneconomic damage caps of $250,000/$500,000 violated the U.S. Const. Fifth Amendment Takings Clause or the right to access courts); Michael S. Hull, et al., House Bill 4 and Proposition 12: An Analysis with Legislative History, Part One: Background and Review, 36 Tex. Tech L. Rev. 1, 7 (2005) (history of tort reform in Texas and noting constitutional amendment).

[60] Shaakirrah R. Sanders, Deconstructing Juryless Fact-Finding in Civil Cases, 25 Wm. & Mary Bill Rts. J. 235, 258-259 & n.160 (2016).

[61] Sudbury v. Deterding, 2001 OK 10, ¶ 8, 19 P.3d 856 (The general rule is that when a statute has been adopted from another state, the judicial construction of that statute by the highest court of the jurisdiction from which the statute is taken accompanies it, and is treated as incorporated); Baskin v. State, 1925 OK 1, 40 A.L.R. 941, 232 P. 388, 389 (our State Constitution is not identical in every respect to the constitutions of other states, and this Court noted a party's brief explaining Okla. Const. Art. 5 § 23 was different from the similar provisions in various states). Cf. Winston v. Stewart & Elder, P.C., 2002 OK 68, ¶ 23, 55 P.3d 1063 (Court may use a federal court's construction of a federal counterpart to a similar provision in the Oklahoma Pleading Code).

[62] Parsons v. Volkswagen of America, Inc., 2014 OK 111, ¶¶ 13, 39, 341 P.3d 662.

[63] The parties and amici curiae invoke sub silentio different elements of teleological and conflicting considerations with balancing of goals/results interests, Platonic Ideal definition of legislative powers and personal constitutional rights, and a lexical ordering of interests/rights in a contested hierarchy of values with higher ordered interests/rights dominating the lower levels. The arguments by the parties and amici curiae are not necessarily internally consistent, but this is not improper on their part as they are advocating alternative methods for the Court to use for reaching their respective litigation goals. Cf. Curtis Nyquist, Re-Reading Legal Realism and Tracing a Genealogy of Balancing, 65 Buff. L. Rev. 771 (2017) (discussing a difference between teleological balancing and conflicting considerations in the context of judicial decision-making involving parties with opposed interests); Daryl J. Levinson, Rights Essentialism and Remedial Equilibration, 99 Colum. L. Rev. 857, 873 (1999) (challenges a court using "rights-essentialist" Platonic Ideal view of a constitutional right as inconsistent with "actual judicial practice"); Jeffrey L. Harrison, Egoism, Altruism, and Market Illusions: The Limits of Law and Economics, 33 UCLA L.Rev. 1309, 1329-1330 (1986) (explaining the idea of "lexical ordering," where values that are afforded priority are not interchangeable with others and the judicially cognizable values must be arranged in hierarchies for enforcement); Richard H. Fallon, Jr., Judicially Manageable Standards and Constitutional Meaning, 119 Harv. L.Rev. 1274, 1314 (2006) (explaining Levinson's "pragmatist position" and stating it is confusing to postulate a constitutional right using a Platonic Ideal definition because if no judicial enforcement method (or remedy) exists in a court under a doctrinal test for that right so defined then the right does not exist either.)

[64] Torres v. Seaboard Foods, LLC, 2016 OK 20, ¶ 35, 373 P.3d 1057, 1075 (decisions concerning public policy in creating and abolishing causes of action are routinely within the judgment of the Legislature; and this Court has a long history of recognizing the Legislature's power to alter private personal rights in contexts of creating or abolishing a cause of action). See, e.g., Williams v. Hook, 1990 OK 136, 804 P.2d 1131 (loss of parental consortium); Burk v. K-Mart Corp., 1989 OK 22, 770 P.2d 24 (employment termination contrary to public policy).

The Court's recognition of the involvement of public interests in defining a cause of action explains in part why the Court has characterized the judicial creation of a cause of action as an act of "judicial legislation." Hill v. Graham, 1967 OK 10, 424 P.2d 35, 38 (judicial creation of a cause of action was characterized as "judicial legislation"). See also Karriman v. Orthopedic Clinic, 1971 OK 83, 488 P.2d 1250, 1251-1252, 1252 (the Court declined to recognize a cause of action which had not been created by the Legislature, and Justice Jackson's separate concurring specially opinion in that case explained the creation of a cause of action is a legislative decision and not a function of the judiciary).

[65] See, e.g., Bohannan v. Allstate Ins. Co., 1991 OK 54, 820 P.2d 787 (the requirements of 36 O.S.1981 § 3636 is to assure contracted coverage for personal injury damages); 70 O.S.2011 § 4313 (Okla. Op. Atty. Gen. No. 74-221 (Feb. 7, 1975), explaining 70 O.S. § 4313 authorized boards of regents to purchase general liability insurance for claims involving bodily injury or property damage).

[66] I have addressed the argument of plaintiffs that they are constitutionally entitled to full compensation for their injury. However, I am also compelled to note the fact a valid "pubic purpose" may be achieved although private parties receive a benefit from legislation and others a detriment. As the High Court has stated: "Any number of cases illustrate that the achievement of a public good often coincides with the immediate benefitting of private parties." Kelo v. City of New London, Conn., 545 U.S. 469, 485, n. 14, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005) citing National Railroad Passenger Corporation v. Boston & Maine Corp., 503 U.S. 407, 422, 112 S.Ct. 1394, 118 L.Ed.2d 52 (1992) (public purpose of "facilitating Amtrak's rail service" served by taking rail track from one private company and transferring it to another private company); Brown v. Legal Foundation of Wash., 538 U.S. 216, 123 S.Ct. 1406, 155 L.Ed.2d 376 (2003) (provision of legal services to the poor is a valid public purpose); Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984).

[67] 1989 OK 139, 782 P.2d 915.

[68] 1988 OK 88, 760 P.2d 816.

[69] St. Paul Fire & Marine Ins. Co. v. Getty Oil, 1989 OK 139, 782 P.2d 915, 920 (by defining the perimeters of the substantive right a statute of repose "in effect adds an additional element to tort claims enumerated thereunder"); Neer v. State ex rel. Oklahoma Tax Comm'n, 1999 OK 41, ¶ 19, 982 P.2d 1071, 1078-1029 (defining a statute of repose).

[70] St. Paul Fire & Marine Ins. Co., 1989 OK 139, 782 P.2d at 915, 919 ("in the early days of statehood such a statute [of repose] was unknown").

[71] Okla. Const. Art. 5 § 46:

The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:

The creation, extension, or impairing of liens;
Regulating the affairs of counties, cities, towns, wards, or school districts;
Changing the names of persons or places;
Authorizing the laying out, opening, altering, or maintaining of roads, highways, streets, or alleys;
Relating to ferries or bridges, or incorporating ferry or bridge companies, except for the erection of bridges crossing streams which form boundaries between this and any other state;
Vacating roads, town plats, streets, or alleys;
Relating to cemeteries, graveyards, or public grounds not owned by the State;
Authorizing the adoption or legitimation of children;
Locating or changing county seats;
Incorporating cities, towns, or villages, or changing their charters;
For the opening and conducting of elections, or fixing or changing the places of voting;
Granting divorces;
Creating offices, or prescribing the powers and duties of officers, in counties, cities, towns, election or school districts;
Changing the law of descent or succession;
Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals, or providing or changing the methods for the collection of debts, or the enforcement of judgments or prescribing the effect of judicial sales of real estate;
Regulating the fees, or extending the powers and duties of aldermen, justices of the peace, or constables;
Regulating the management of public schools, the building or repairing of school houses, and the raising of money for such purposes;
Fixing the rate of interest;
Affecting the estates of minors, or persons under disability;
Remitting fines, penalties and forfeitures, and refunding moneys legally paid into the treasury;
Exempting property from taxation;
Declaring any named person of age;
Extending the time for the assessment or collection of taxes, or otherwise relieving any assessor or collector of taxes from due performance of his official duties, or his securities from liability;
Giving effect to informal or invalid wills or deeds;
Summoning or impaneling grand or petit juries;
For limitation of civil or criminal actions;
For incorporating railroads or other works of internal improvements;
Providing for change of venue in civil and criminal cases.

[72] St. Paul Fire & Marine Ins. Co., 1989 OK 139, 782 P.2d at 921-922.

[73] Lafalier v. Lead-Impacted Communities Relocation Assistance Trust, 2010 OK 48, ¶ 26, 237 P.3d 181, 192.

[74] When explaining a choice-of-law issue in 2003 we stated the affirmative defense of comparative negligence could not be separated from the tort (cause of action) for which it was a defense. See, e.g., Hightower v. Kansas City Southern Ry. Co., 2003 OK 45, ¶ 10, 70 P.3d 835, 842, relying on Brickner v. Gooden, 1974 OK 91, 525 P.2d 632, 637. Cf. Mansfield v. Circle K. Corp., 1994 OK 80, n. 16, 877 P.2d 1130, 1136 (Oklahoma Legislature created the defense of comparative negligence). Cf. Clark v. Cassidy, 64 Haw. 74, 636 P.2d 1344, 1346-1347 (1981) (Substantive rights are generally defined as rights which take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability in respect to transactions or considerations already past, as distinguished from remedies or procedural laws which merely prescribe methods of enforcing or giving effect to existing rights).

[75] Racher v. Westlake Nursing Home Ltd. P'ship, 871 F.3d 1152, 1162 (10th Cir. 2017) citing Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 428, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996).

[76] Racher v. Westlake Nursing Home Ltd. P'ship, 871 F.3d 1152, 1162 (10th Cir. 2017) citing Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) and James River Ins. Co. v. Rapid Funding, LLC, 658 F.3d 1207, 1216--17 (10th Cir. 2011) (federal courts must apply state substantive law in diversity cases).

[77] Racher v. Westlake Nursing Home Ltd. P'ship, 871 F.3d at 1161, 1165-1167.

[78] Liddell v. Heavner, 2008 OK 6, ¶ 16, 180 P.3d1191, 1199.

[79] The essential elements of a negligence cause of action are duty, breach, causation, and damages. Brigance v. Velvet Dove Restaurant, Inc., 1986 OK 41, 725 P.2d 300, 306. Cf. Dan B. Dobbs, Paul T. Hayden and Ellen M. Burdick, The Law of Torts, § 124 (2d ed., as updated 2018 ) (elements of a tort prima facie case for negligence include duty, breach, harm caused in fact, breach was proximate cause of harm, damages based on actual harm when damages are "legally recognized"). See also note 19 herein and Anagnost v. Tomecek, supra.

[80] Zeier v. Zimmer, Inc., 2006 OK 98, ¶ 13, 152 P.3d 861; State ex rel. Macy v. Bd. of County Comm'rs of Okla. County, 1999 OK 53, ¶ 14, 986 P.2d 1130.

[81] Lee v. Bueno, 2016 OK 97, ¶ 12, 381 P.3d 736, 742.

[82] Lee v. Bueno, 2016 OK 97, at ¶ 9, 381 P.3d at 741.

[83] Lee v. Bueno, 2016 OK 97, at ¶ 24, 381 P.3d at 745.

[84] 2014 OK 118, 341 P.3d 660.

[85] 2014 OK 118, at ¶ 7, 341 P.3d at 662.

[86] 2014 OK 118, at ¶ 3, 341 P.3d at 661.

[87] See, e.g., Sullins v. American Medical Response of Oklahoma, Inc., 2001 OK 20, 23 P.3d 259, 266-267 (governmental tort liability is governed by the power of the Legislature); Gladstone v. Bartlesville Independent School Dist. No. 30 (I-30), 2003 OK 30, 66 P.3d 442, (Legislature's creation of sovereign immunity and its exceptions did not violate equal protection); Jarvis v. City of Stillwater, 1987 OK 5, 732 P.2d 470, 473 (six-month time bar in 51 O.S.1981 § 156(C) of the Political Subdivision Tort Claims Act, (an Act including statutory caps on damages), did not violate Art. 5 § 46); Black v. Ball Janitorial Service, Inc., 1986 OK 75, 730 P.2d 510, 515, (special law provision in Okla. Const. Art 5 § 59 as it related to the Political Subdivision Tort Claims Act, 51 O.S.1981 §§ 151-170, was not violated because the classification was reasonable for the attainment of a legitimate objective and operates uniformly upon all members of the class).

[88] See, e.g., Oklahoma Dept. of Securities ex rel. Faught v. Blair, 2010 OK 16, n. 22, 231 P.3d 645, 658 (jurisdictional power to render the particular judgment involves the compliance with law mandatory for the existence of a judgment).

[89] Weaber v. City of Perry, 1932 OK 819, 16 P.2d 883, 884.

[90] 23 O.S.2011 § 61.2(C).

[91] Powers v. District Court of Tulsa County, 2009 OK 91, ¶ 28, 227 P.3d 1060, 1078 (Court construes statutes, if possible, to be consistent with constitutional provisions). Cf. Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932) (when the validity of an act of the Congress is drawn in question it is a cardinal principle that the Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided).

Due to my conclusion I need not address a hypothetical issue raising the constitutional scope and nature of a legislatively created mandatory and jurisdictional limitation imposed on a District Court's jurisdiction over a common law cause of action and a party's right to a jury trial. Gaasch Estate of Gaasch v. St. Paul Fire and Marine Insurance Company, 2018 OK 12, n. 23, 412 P.3d 1151, 1157 (Court does not address hypothetical issues in an appeal).

[92] See, e.g., Hightower v. Kansas City Southern Ry. Co., 2003 OK 45, ¶ 10, 70 P.3d 835, 842, relying on Brickner v. Gooden, 1974 OK 91, 525 P.2d 632, 637. Cf. Mansfield v. Circle K. Corp., 1994 OK 80, n. 16, 877 P.2d 1130, 1136 (Oklahoma Legislature created the defense of comparative negligence).

[93] Smith v. Jenkins, 1994 OK 43, 873 P.2d 1044, 1046-1047 (Oklahoma's modified comparative negligence statutory scheme apportions loss and damages among those whose fault contributed to the harm-dealing event). Cf. Davis v. CMS Continental Natural Gas, Inc., 2001 OK 33, n. 4, 23 P.3d 288, 290 (explaining the statutory comparative negligence scheme authorized party who was not more than fifty percent negligent to recover a percentage of damages sustained).

[94] Harris v. V.S. Cook Lumber, 1931 OK 524, 3 P.2d 694, 703. See, e.g., Weatherly v. Higgins, 6 Ind. 73 (1854) (jury returned a special verdict setting out facts but did not specify the amount of damages to awarded in the judgment, and then the court assessed the amount of damages and rendered judgment for plaintiff).

[95] Smith v. Gizzi, 1977 OK 91, 564 P.2d 1009, 1013, citing Vaught v. Holland, 1976 OK 119, 554 P.2d 1174, 1177 (the fact interrogatories, which amount to submitting the general issues on which the parties are entitled to recover, were submitted to jury instead of general forms of verdict will not, alone, necessarily work a reversal of a judgment based upon answers given by the jury to the interrogatories).

[96] Bierman v. Aramark Refreshment Servs., Inc., 2008 OK 29, ¶ 22, 198 P.3d 877, 884.

[97] C & H Power Line Constr. Co. v. Enter. Products Operating, LLC, 2016 OK 102, ¶ 17, 386 P.3d 1027, 1032.

[98] State v. Price, 2012 OK 51, ¶ 30, 280 P.3d 943, 952-953. See, e.g., Lee v. Bueno, 2016 OK 97, ¶ 14, ¶¶ 27-32, 381 P.3d 736 (12 O.S.2011 § 3009.1, stating when medical bills are admissible in evidence and allowing evidence of bills a plaintiff actually owes a medical provider and also allowing in evidence amounts plaintiff actually paid, does not violate Okla. Const. Art. 2 § 19).

[99] Death of Lofton v. Green, 1995 OK 109, 905 P.2d 790, 793.

[100] Carris v. John R. Thomas and Associates, P.C., 1995 OK 33, n. 18, 896 P.2d 522, 529, citing Park v. Security Bank & Trust Co., 1973 OK 72, 512 P.2d 113, 117; Complete Auto Transit, Inc. v. Reese, 1967 OK 73, 425 P.2d 465, 470; Hames v. Anderson, 1977 OK 191, 571 P.2d 831, 833; Hardesty v. Andro Corp.--Webster Div., 1976 OK 129, 555 P.2d 1030, 1035, disapproved on other grounds Old Albany Estates, Ltd. v. Highland Carpet Mills, Inc., 1979 OK 144, 604 P.2d 849; First Nat. Bank of Amarillo v. LaJoie, 1975 OK 95, 86 A.L.R.3d 309, 537 P.2d 1207, 1211.

[101] Chicago, R. I. & P. Ry. Co. v. Stibbs, 1906 OK 50, 87 P. 293, 295, quoting Railroad Company v. Barron, 72 U. S. (5 Wall.) 90, 105, 18 L. Ed. 591 (1866).

[102] State v. Bowling, 1923 OK 162, 213 P. 745, 747 (quoting R.L.1910, § 5033 and its language providing for a new trial when a verdict was contrary to law); Boyd v. Bryan, 1901 OK 28, 65 P. 940, 941 (Supreme Court for the Territory of Oklahoma explained a motion for new trial may be brought for reason that such is not sustained by sufficient evidence and is contrary to law).

[103] 2017 OK 69, ¶ 22, 404 P.3d 843, 853 (notes and authority omitted).

[104] John v. Saint Francis Hospital, Inc., 2017 OK 81, ¶ 16, 405 P.3d 681, 688, quoting Gibby v. Hobby Lobby Stores, 2017 OK 78, ¶ 5, 404 P.3d 44.

[105] Graham v. D & K Oilfield Services, Inc., 2017 OK 72, ¶¶ 29- 30, 404 P.3d 863, 873; Lafalier v. Lead-Impacted Communities Relocation Assistance Trust, 2010 OK 48, ¶¶ 18-20, 237 P.3d 181, 190.

[106] John v. Saint Francis Hospital, Inc., 2017 OK 81, ¶¶ 16-18, 405 P.3d 681, 687-688 (statute could not be used to deny the constitutional guarantee of court access); Zeier v. Zimmer, Inc., 2006 Ok 98, ¶ 25, 152 P.3d 861, 872 (statute could not be used to deny the constitutional guarantee of court access); Moses v. Hoebel, 1982 OK 26, 646 P.2d 601 (court order could not condition payment in one case as condition on plaintiff to file another case).

[107] Johnson v. Board of Governors of Registered Dentists of State of Okla., 1996 OK 41, 913 P.2d 1339, 1345, citing Addington v. Texas, 441 U.S. 418, 424, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).

[108] Johnson v. Board of Governors, etc., 1996 OK 41, 913 P.2d at 1345.

[109] Johnson v. Board of Governors, etc., 1996 OK 41, 913 P.2d at 1345.

[110] Matter of Adoption of M.A.S., 2018 OK 1, ¶ 11, 419 P.3d 204, 208.

[111] State ex rel. Z.D. v. Utah, 2006 UT 54, 147 P.3d 401, 407.

[112] Lincoln Nat. Life Ins. Co. v. Donaldson, Lufkin & Jenrette Securities Corp., 9 F. SupP.2d 994, 1005 (N.D. Ind. 1998) (discussed a heightened pleading requirement) citing In re First Chicago Corp. v. Securities Litigation, 769 F.Supp. 1444, 1452 (N.D.Ill.1991) (explaining Fed.R.Civ.Pro. 9(b) has a heightened pleading requirement for fraud and mistake which must be pled with particularity). Plaintiffs also relied on an opinion by Justice Stevens announcing the judgment of the Court in which only Chief Justice Rehnquist joined in Miller v. Albright, 523 U.S. 420, 436, 118 S.Ct. 1428, 140 L.Ed2d 575 (1998), with the opinion stating a clear and convincing evidence standard had been incorporated into a federal statute to deter "fraudulent claims."

[113] John v. Saint Francis Hospital, Inc., 2017 OK 81, ¶¶ 10-11, 405 P.3d 681, 685-686, explaining Zeier v. Zimmer, 2006 OK 98, 152 P.3d 861.

[114] Patricia Hatamyar, The Effect of "Tort Reform" on Tort Case Filings, 43 Val. U. L. Rev. 559, 592 (2009).

[115] Because of my disposition of this claim I need not discuss a court using a fact, either legislative or adjudicative, in a law review article to adjudicate a cause of action in a trial court or a challenge to a judgment on appeal when the fact does not appear on the judgment roll. But see, e.g., Reeves v. Agee, 1989 OK 25, n. 15, 769 P.2d 745, 752 (judicial notice, part of our evidence law, is a court's cognizance of an adjudicative fact without any proof and includes matters of common and general knowledge that are well established and authoritatively settled); Wesley--Jessen Div. of Schering Corp. v. Bausch & Lomb Inc., 698 F.2d 862, 865 (7th Cir.1983) (difference between taking judicial notice of materials as a substitute for evidence and using materials for background information); Lingad v. Indymac Federal Bank, 682 F.Supp.2d 1142, 1146 (E.D.Cal. 2010) (to take judicial notice of a fact, it must be either generally known within the territorial jurisdiction of the court or capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably be questioned, and declining to judicially notice a law review article).

[116] Rollings v. Thermodyne Industries, Inc., 1996 OK 6, 910 P.2d 1030, 1032.

[117] See my discussion herein and the clash between (1) the view that tort law should prioritize and serve a State-recognized interest to create lower insurance costs, and (2) the view that tort law should prioritize and serve a State-recognized interest requiring every person to be fully compensated in a court of law.

[118] The Due Process Section of the Oklahoma Constitution also has an equal protection component. Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City, 1995 OK 62, 901 P.2d 800, n. 29, 805, cert. denied, 516 U.S. 1029, 116 S.Ct. 674, 133 L.Ed.2d 523 (1995) ("The same equal protection component found in the fourteenth amendment of the United States Constitution is present in the due process clause of art. 2, § 7.").

[119] Torres v. Seaboard Foods, LLC, 2016 OK 20, ¶32, & n.2, 373 P.3d 1057, 1074.

[120] Torres v. Seaboard Foods, LLC, 2016 OK 20, at ¶32, 373 P.3d at 1074.

[121] Torres v. Seaboard Foods, LLC, 2016 OK 20, at ¶¶ 26, 32.

[122] Matter of Adoption of M.A.S., 2018 OK 1, 11, 419 P.3d 204, 208. See, e.g., Matter of B.K., 2017 OK 58, ¶ 37, 398 P.3d 323, 330 (evidence was of such character and quality that the jury could form a firm conviction that the grounds for termination of parental rights were proven by clear and convincing evidence).

[123] In re M. K. T., 2016 OK 4, ¶ 47, 368 P.3d 771, 785.

[124] Weaver v. Laub, 1977 OK 242, 574 P.2d 609, 613-614.

[125] Wilspec Techs., Inc. v. DunAn Holding Grp., Co., 2009 OK 12, ¶¶ 17-18, 204 P.3d 69, 75 (applying 23 O.S.2001 § 9.1).

[126] Dill v. Rader, 1978 OK 78, 583 P.2d 496, 499 (the evidence must be clear and convincing in order to make out a prima facie case of conspiracy).

[127] Mueggenborg v. Walling, 1992 OK 121, 836 P.2d 112, 113-114.

[128] Grogan v. KOKH, LLC, 2011 OK CIV APP 34, ¶ 18, 256 P.3d 1021, 1030 (Approved for Publication by Order of the Supreme Court), (review of a summary judgment motion in a defamation case when a dispute of fact concerns actual malice), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

[129] Brown v. Founders Bank and Trust Co., 1994 OK 130, n.17, 890 P.2d 855, 862.

[130] Berry and Berry Acquisitions, LLC v. BFN Properties LLC, 2018 OK 27, ¶ 25, 416 P.3d 1061, 1073.

[131] In re Guardianship of C.D.A., 2009 OK 47, ¶ 7, 212 P.3d 1207, 1209.

[132] Scott v. Peters, 2016 OK 108, n. 10, 388 P.3d 699, 703. See also Hoar v. Aetna Casualty & Surety Co., 1998 OK 95, ¶ 17, 968 P.2d 1219, 1223 (when clear and convincing evidence is presented Oklahoma permits reformation of a contract, including an insurance contract, to reflect the understanding of the parties in situations where there is fraud, accident or mutual mistake).

[133] State ex rel. Oklahoma Bar Association v. Kruger, 2018 OK 53, ¶ 2, 421 P.3d 306, 309.

[134] Compare Whillock v. Whillock, 1976 OK 51, 550 P.2d 558, 560 (clear and convincing standard) with Henry v. Schmidt, 2004 OK 34, ¶ 19, 91 P.3d 651 (federal constitutional protections require proof of the offense beyond a reasonable doubt when a penal sanction is imposed).

[135] Wilspec Techs., Inc. v. DunAn Holding Grp., Co., 2009 OK 12, ¶ 18, 204 P.3d 69, 75 (in addition to proving the elements of a tort, the plaintiff seeking punitive damages for tortious interference with a contract obligation must prove that the defendant acted either recklessly, intentionally, or maliciously by clear and convincing evidence) (applying 23 O.S.2001 § 9.1).

[136] See, e.g., Schmidt v. U.S., 1996 OK 29, 912 P.2d 871, 874 (public policy allowing a party to contractually assume risks related to another person's conduct does not allow contractual assumption of risk for intentional, willful or fraudulent acts, or gross or wanton negligence of another); Elsken v. Network Multi-Family Sec. Corp., 1992 OK 136, 838 P.2d 1007, 1009 (the Court noted limitations on liability in burglar alarm contracts did not violate public policy even when applied to a claim of personal injury, but courts have declined to uphold limitation of liability contract clauses when defendant's conduct constituted gross negligence because such would violate public policy).

[137] Johnson v. Board of Governors of Registered Dentists of State of Okla., 913 P.2d at 1345, citing Addington v. Texas, 441 U.S. 418, 424.

[138] St. Paul Fire & Marine Ins. Co. v. Getty Oil, 1989 OK 139, 782 P.2d 915, 919-921.

[139] Plaintiffs expressly make no substantive due process claim herein or point to facts of record in support thereof. The Court noted in Torres that some have argued due process provides both a ceiling on imposing liability and a floor when removing a cause of action. Torres, at ¶¶ 24, 36. No claim is made herein that the $350,000 cap is arbitrary in the constitutional sense of being "beneath the due process floor," or that a statutory provision for raising the cap over time as in some states is constitutionally required.

[140] Lee v. Bueno, 2016 OK 97, ¶ 40, 381 P.3d 736; Conaghan v. Riverfield Country Day School, 2007 OK 60, ¶ 20, 163 P.3d 557.

[141] 75 O.S.2011 § 11a:

In the construction of the statutes of this state, the following rules shall be observed:

1. For any act enacted on or after July 1, 1989, unless there is a provision in the act that the act or any portion thereof or the application of the act shall not be severable, the provisions of every act or application of the act shall be severable. If any provision or application of the act is found to be unconstitutional and void, the remaining provisions or applications of the act shall remain valid, unless the court finds:

a. the valid provisions or application of the act are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the Legislature would have enacted the remaining valid provisions without the void one; or

b. the remaining valid provisions or applications of the act, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

2. For acts enacted prior to July 1, 1989, whether or not such acts were enacted with an express provision for severability, it is the intent of the Oklahoma Legislature that the act or any portion of the act or application of the act shall be severable unless:

a. the construction of the provisions or application of the act would be inconsistent with the manifest intent of the Legislature;

b. the court finds the valid provisions of the act are so essentially and inseparably connected with and so dependent upon the void provisions that the court cannot presume the Legislature would have enacted the remaining valid provisions without the void one; or

c. the court finds the remaining valid provisions standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

[142] Hunsucker v. Fallin, 2017 OK 100, 408 P.3d 599.

[143] Liddell v. Heavner, 2008 OK 6, ¶ 29, & n. 53, 180 P.3d 1191, 1203, citing Ethics Commission of State of Okla. v. Cullison, 1993 OK 37, 850 P.2d 1069, 1077.

[144] See, e.g., U.S. v. Mayer, 235 U.S. 55, 35 S. Ct. 16, 59 L. Ed. 129 (1914) (discussing federal district court's lack of jurisdiction in particular circumstance); Bank of Havana v. Magee, 20 N. Y. 355, 362 (1859) (every action must be prosecuted in the name of the real party in interest); Shields v. Barrow, 58 U.S. (17 How.) 130, 15 L.Ed. 158 (1854) (court noted three classes of parties in equity, formal parties, persons possessing an interest in the controversy who ought to be made formal parties, and persons possessing an interest in the controversy when a final decree may not be entered without affecting that interest or creating a final adjudication inconsistent with equity and good conscience); Munday v. Vail, 34 N.J.L. 418 (1871) (judgment upon a matter outside issues of record is beyond the jurisdiction of the court).

[145] Oklahoma Transportation Co. v. Phillips, 1953 OK 381, 265 P.2d 467.

[146] Missouri Pac. R. Co. v. Steel, 1929 OK 556, 284 P. 21, 26.

[147] Seay v. Plunkett, 1914 OK 602, 145 P. 496 (Syllabus by the Court).

[148] Willis v. Cochran, 1917 OK 462, 168 P. 658 (ad damnum may be amended pursuant to Rev. Laws 1910, § 4787, subsequently codified at 12 O.S. § 314, repealed by Laws 1984, c. 164, § 32, eff. Nov. 1, 1984); Frick-Reid Supply Co. v. Aggers, 1911 OK 90, 114 P. 622, 623-624 (verdict in excess of the ad damnum may be corrected by remittitur); McDermott v. Severe, 25 App.D.C. 276, 290 (1905), aff'd, 202 U.S. 600, 26 S.Ct. 709, 50 L.Ed. 1162 (1906) (court approved jury instruction stating verdict could not exceed the $25,000 amount alleged as damages); Sweet v. Exclesior Elec. Co., 59 N.J.L. (30 Vroom) 441, 31 A. 721 (1895) (if a declaration for unliquidated damages which contains no indication of the extent of the plaintiff's claim outside of the ad damnum clause, then no amendment may occur after trial to authorize a judgment in excess of the ad damnum); Sheldon v. Sullivan, 45 Mich. 324, 7 N.W. 900 (1881) (when a defective general ad damnum is used at the end of a declaration the ad damnum may be amended); Corning v. Corning, 6 N. Y. (2 Seld.) 97 (1851) (verdict for $3,000 upon plaintiff's $2,000 ad damnum gave plaintiff a right to enter a remittitur for the excess and for the court to enter judgment on the reduced amount and refuse an application for new trial); Hemmenway v. Hickes, 21 Mass. (4 Pick.) 497 (1827) (a judgment erroneously rendered for a sum greater than the ad damnum could be addressed by remittitur). Cf. Strahm v. Murry, 1948 OK 227, 199 P.2d 603, 605 (judgment for damages in an amount greater than that sought in the petition could not be sustained although supported by evidence, when plaintiff's pleading was never amended to conform to the proof in this respect).

[149] Macartney v. Compagnie Generale Transatlantique, 1958 A.M.C. 819, 253 F.2d 529, 531-532, emphasis added, and explaining Chesapeake & Ohio R. Co. v. Carnahan, 241 U.S. 241, 36 S.Ct. 594, 60 L.Ed. 979 (1915); McDermott v. Severe, 1905, 202 U.S. 600, 26 S.Ct. 709, 50 L.Ed. 1162 (1905); Hoffschlaeger Co., Ltd. v. Fraga, 290 F. 146, 149 (9th Cir. 1923).

[150] Oldenburg v. Clark, 489 F.2d 839, 843 (10th Cir. 1974) citing Chesapeake & O.R. v. Carnahan, 241 U.S. 241, 36 S.Ct. 594, 60 L.Ed. 979 (1916); Dowell, Inc. v. Jowers, 182 F.2d 576 (5th Cir. 1950); Annot., Instruction Mentioning or Suggesting Specific Sum as Damages in Action for Personal Injury of Death, 2 A.L.R.2d 454.

[151] See, e.g., Michael. S. Kang, Don't Tell Juries About Statutory Damage Caps: The Merits of Nondisclosure, 66 U. Chi. L. Rev. 469, 470, 472 (1999) (arguing that informing jurors of damage caps will unduly influence jurors and distort damage awards).

[152] Pierce v. Central Maine Power Co., 622 A.2d 80, 83 (Me. 1993).

[153] Brown v. Crown Equipment Corp., 445 F.Supp.2d 59, 75-76 (D. Me. 2006) (noting the comment to the instruction by Justice Alexander of the Maine Supreme Judicial Court). Cf. Rebecca Hollander-Blumoff & Matthew T. Bodie, The Effects of Jury Ignorance About Damage Caps: The Case of the 1991 Civil Rights Act, 90 Iowa L. Rev. 1361, 1369 (2005) (although a particular federal statutory cause of action requires jury ignorance of a cap on damages there was apparently little discussion during enactment why such was necessary or "whether damages are more likely to be moved upward or downward if the caps were to be revealed" to a jury).

[154] Carris v. John R. Thomas and Assoc., P.C., 1995 OK 33, 896 P.2d 522, 529.

[155] Fowler v. Lincoln County Conservation Dist., 2000 OK 96, ¶ 18, 15 P.3d 502, 508.

[156] Dodson v. Henderson Properties, Inc., 1985 OK 71, 708 P.2d 1064, 1066.

[157] See, e.g., Douglas Walton, Ad Hominem Arguments, (Tuscaloosa; AL: Univ. of Alabama Press, 1998) 33, 51-64 (distinguishing a proper argument alleging bias and used for a credibility determination of a witness with an allegation of bias used to replace a valid premise for the argument asserted).

[158] Hunsucker v. Fallin, 2017 OK 100, ¶ 37, 408 P.3d 599, 612.

[159] Torres v. Seaboard Foods, LLC, 2016 OK 20, ¶ 46, 373 P.3d 1057, 1079.

[160] Torres v. Seaboard Foods, LLC, 2016 OK 20, at n. 49, 373 P.3d at 1072, discussing responses to Lochner v. New York, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905).






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2003 OK CIV APP 30, 67 P.3d 924, LOFTIS v. MULTIPLE INJURY TRUST FUND
Discussed
 2011 OK CIV APP 34, 256 P.3d 1021, GROGAN v. KOKH, LLC
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1986 OK 41, 725 P.2d 300, 57 OBJ 1698, Brigance v. Velvet Dove Restaurant, Inc.
Discussed
 1986 OK 73, 766 P.2d 1347, 57 OBJ 2885, Davis Oil Co. v. Cloud
Discussed at Length
 1986 OK 75, 730 P.2d 510, 57 OBJ 3023, Black v. Ball Janitorial Service, Inc.
Discussed
 1987 OK 5, 732 P.2d 470, 58 OBJ 273, Jarvis v. City of Stillwater
Discussed
 1987 OK 114, 746 P.2d 1135, 58 OBJ 3282, Fair School Finance Council of Oklahoma, Inc. v. State
Discussed
 1988 OK 35, 753 P.2d 1349, 59 OBJ 950, Wilson v. Gipson
Discussed
 1988 OK 53, 770 P.2d 878, 59 OBJ 1234, Silver v. Slusher
Discussed
 1988 OK 88, 760 P.2d 816, 59 OBJ 1987, Reynolds v. Porter
Discussed at Length
 1989 OK 22, 770 P.2d 24, 60 OBJ 305, Burk v. K-Mart Corp.
Discussed
 1989 OK 25, 769 P.2d 745, 60 OBJ 369, Reeves v. Agee
Discussed
 2000 OK 96, 15 P.3d 502, 71 OBJ 3232, FOWLER v. LINCOLN COUNTY CONSERVATION DIST.
Discussed
 1989 OK 139, 782 P.2d 915, 60 OBJ 2835, St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.
Discussed at Length
 1913 OK 510, 134 P. 655, 38 Okla. 581, MISSOURI K. & T. RY. CO. v. WEST
Discussed
 1990 OK 58, 807 P.2d 774, 61 OBJ 1765, Forest Oil Corp. v. Corporation Com'n of Oklahoma
Discussed
 1990 OK 136, 804 P.2d 1131, 62 OBJ 53, Williams v. Hook
Discussed
 1991 OK 54, 813 P.2d 508, 62 OBJ 1867, Ohio Cas. Ins. Co. v. Todd
Cited
 1991 OK 64, 820 P.2d 787, 62 OBJ 2093, Bohannan v. Allstate Ins. Co.
Cited
 1992 OK 32, 829 P.2d 677, 63 OBJ 696, Parker v. Elam
Discussed
 1992 OK 72, 833 P.2d 1218, 63 OBJ 1507, Tate v. Browning-Ferris, Inc.
Discussed
 1992 OK 121, 836 P.2d 112, 63 OBJ 2315, Mueggenborg v. Walling
Discussed
 1992 OK 136, 838 P.2d 1007, 63 OBJ 2926, Elsken v. Network Multi-Family Sec. Corp.
Discussed
 1993 OK 37, 850 P.2d 1069, 64 OBJ 978, Ethics Com'n of State of Okl. v. Cullison
Discussed
 1948 OK 227, 199 P.2d 603, 200 Okla. 640, STRAHM v. MURRY
Discussed
 1895 OK 71, 41 P. 635, 3 Okla. 677, Guthrie Daily Leader v. Cameron
Discussed
 2001 OK 10, 19 P.3d 856, 72 OBJ 365, SUDBURY v. DETERDING
Discussed at Length
 2001 OK 20, 23 P.3d 259, 72 OBJ 573, SULLIN v. AMERICAN MEDICAL RESPONSE OF OKLAHOMA, INC
Discussed
 1914 OK 602, 145 P. 496, 44 Okla. 794, SEAY et al. v. PLUNKETT.
Discussed
 1916 OK 2, 154 P. 1177, 55 Okla. 398, SACKETT v. ROSE
Discussed
 1994 OK 43, 873 P.2d 1044, 65 OBJ 1487, Smith v. Jenkins
Discussed
 1994 OK 80, 877 P.2d 1130, 65 OBJ 2334, Mansfield v. Circle K. Corp.
Discussed at Length
 1994 OK 99, 880 P.2d 912, 65 OBJ 2532, Stallings v. Oklahoma Tax Com'n
Discussed
 1994 OK 130, 890 P.2d 855, 65 OBJ 3961, Brown v. Founders Bank and Trust Co.
Discussed
 1997 OK 103, 943 P.2d 1074, 68 OBJ 2550, LOCKHART v. LOOSEN
Discussed
 2001 OK 33, 23 P.3d 288, 72 OBJ 1479, DAVIS v. CMS CONTINENTAL NATURAL GAS, INC
Discussed
 1953 OK 381, 265 P.2d 467, OKLAHOMA TRANSP. CO. v. PHILLIPS
Discussed
 1936 OK 420, 58 P.2d 323, 177 Okla. 208, DEEP ROCK OIL CORP. v. GRIFFETH
Discussed
 1917 OK 100, 162 P. 950, 62 Okla. 284, VAN SICKLE v. FRANKLIN
Discussed
 1917 OK 462, 168 P. 658, 66 Okla. 257, WILLIS et al. v. COCHRAN et al.
Discussed
 1906 OK 50, 87 P. 293, 17 Okla. 97, CHICAGO ROCK ISLAND & PAC. RY. CO. v. STIBBS
Discussed
 1932 OK 819, 16 P.2d 883, 160 Okla. 205, WEABER v. CITY of PERRY et al.
Discussed
 1909 OK 317, 109 P. 544, 25 Okla. 353, BURKS v. WALKER.
Discussed
 1967 OK 10, 424 P.2d 35, HILL v. GRAHAM
Discussed
 1967 OK 73, 425 P.2d 465, COMPLETE AUTO TRANSIT, INC. v. REESE
Discussed
 1931 OK 524, 3 P.2d 694, 152 Okla. 7, HARRIS et al. v. V. S. COOK LBR. CO.
Discussed
 1923 OK 162, 213 P. 745, 89 Okla. 9, STATE ex rel. PITMAN Co. Atty. v. BOWLING
Discussed
 2002 OK 68, 55 P.3d 1063, WINSTON v. STEWART & ELDER, P.C.
Discussed
 1995 OK 33, 896 P.2d 522, 66 OBJ 1239, Carris v. John R. Thomas and Associates, P.C.
Discussed at Length
 1995 OK 62, 901 P.2d 800, 66 OBJ 2037, Oklahoma Assn. for Equitable Taxation v. City of Oklahoma City
Discussed
 1968 OK 73, 464 P.2d 748, OKLA. WATER RESOURCES. BD. v. CENTRAL OKLA. MASTER CONSERVANCY DIST.
Discussed
 1971 OK 83, 488 P.2d 1250, KARRIMAN v. ORTHOPEDIC CLINIC
Discussed
 1995 OK 109, 905 P.2d 790, 66 OBJ 3299, Death of Lofton v. Green
Discussed
 1973 OK 72, 512 P.2d 113, PARK v. SECURITY BANK AND TRUST COMPANY
Discussed
 1974 OK 91, 525 P.2d 632, BRICKNER v. GOODEN
Discussed at Length
 2003 OK 30, 66 P.3d 442, GLADSTONE v. BARTLESVILLE INDEPENDENT SCHOOL DISTRICT NO. 30
Discussed
 2003 OK 45, 70 P.3d 835, HIGHTOWER v. KANSAS CITY SOUTHERN RAILWAY CO.
Discussed at Length
 2004 OK 34, 91 P.3d 651, HENRY v. SCHMIDT
Discussed
 1996 OK 6, 910 P.2d 1030, 67 OBJ 399, Rollings v. Thermodyne Industries, Inc.
Discussed
 1996 OK 29, 912 P.2d 871, 67 OBJ 873, Schmidt v. U.S.
Discussed
 2006 OK 16, 133 P.3d 281, CITY OF ENID v. PUBLIC EMPLOYEES RELATIONS BOARD
Discussed
 1996 OK 41, 913 P.2d 1339, 67 OBJ 1027, Johnson v. Bd. Of Gov. of Registered Dentists
Discussed at Length
 2006 OK 98, 152 P.3d 861, ZEIER v. ZIMMER, INC.
Discussed at Length
 2007 OK 60, 163 P.3d 557, CONAGHAN v. RIVERFIELD COUNTRY DAY SCHOOL
Discussed
 2008 OK 6, 180 P.3d 1191, LIDDELL v. HEAVNER
Discussed at Length
 2008 OK 29, 198 P.3d 877, BIERMAN v. ARAMARK REFRESHMENT SERVICES, INC.
Discussed
 2008 OK 36, 184 P.3d 546, MOVANTS TO QUASH MULTICOUNTY GRAND JURY SUBPOENA v. DIXON
Discussed
 1929 OK 428, 283 P. 571, 141 Okla. 1, BROOKSHIRE v. BURKHART
Discussed
 1929 OK 556, 284 P. 21, 141 Okla. 133, MISSOURI PAC. R. CO. v. STEEL
Discussed
 2009 OK 12, 204 P.3d 69, WILSPEC TECHNOLOGIES, INC. v. DUNAN HOLDING GROUP, CO. LTD.
Discussed at Length
 2009 OK 47, 212 P.3d 1207, IN THE MATTER OF THE GUARDIANSHIP OF C.D.A.
Discussed
 2009 OK 91, 227 P.3d 1060, POWERS v. DISTRICT COURT OF TULSA COUNTY
Discussed
 2010 OK 3, 230 P.3d 853, ROGERS v. QUIKTRIP CORP.
Discussed
 2010 OK 16, 231 P.3d 645, DEPT. OF SECURITIES ex rel. FAUGHT v. BLAIR
Discussed
 2010 OK 48, 237 P.3d 181, LAFALIER v. THE LEAD-IMPACTED COMMUNITIES RELOCATION ASSISTANCE TRUST
Discussed at Length
 2010 OK 75, 242 P.3d 534, PONCA IRON & METAL, INC. v. WILKINSON
Discussed at Length
 2011 OK 30, 258 P.3d 495, ESTRADA v. PORT CITY PROPERTIES, INC.
Discussed
 2011 OK 53, 260 P.3d 1251, THOMAS v. HENRY
Discussed
 2011 OK 81, 264 P.3d 1190, EVANS & ASSOC. UTILITY SERVICES v. ESPINOSA
Discussed
 1925 OK 1, 232 P. 388, 107 Okla. 272, BASKIN v. STATE ex rel. SHORT
Discussed
 2012 OK 51, 280 P.3d 943, STATE v. PRICE
Discussed
 2012 OK 65, 290 P.3d 741, WALTRIP v. OSAGE MILLION DOLLAR ELM CASINO
Discussed
 2013 OK 36, 302 P.3d 775, WALL v. MAROUK
Discussed at Length
 1975 OK 95, 537 P.2d 1207, FIRST NATIONAL BANK OF AMARILLO v. LaJOIE
Discussed
 1976 OK 51, 550 P.2d 558, WHILLOCK v. WHILLOCK
Discussed
 1976 OK 119, 554 P.2d 1174, VAUGHT v. HOLLAND
Discussed
 2014 OK 23, 326 P.3d 496, IN RE: INITIATIVE PETITION NO. 397, STATE QUESTION NO. 767
Discussed
 2014 OK 31, 339 P.3d 848, CDR SYSTEMS CORPORATION v. OKLAHOMA TAX COMMISSION
Discussed
 1976 OK 129, 555 P.2d 1030, HARDESTY v. ANDRO CORPORATION-WEBSTER DIVISION
Discussed
 1977 OK 70, 563 P.2d 143, LOYAL ORDER OF MOOSE, LODGE 1785 v. CAVANESS
Discussed at Length
 1977 OK 91, 564 P.2d 1009, SMITH v. GIZZI
Discussed at Length
 2014 OK 111, 341 P.3d 662, HESS v. VOLKSWAGEN OF AMERICA, INC.
Discussed
 2014 OK 118, 341 P.3d 660, MONTGOMERY v. POTTER
Discussed at Length
 2015 OK 18, 352 P.3d 1196, IN RE: DETACHMENT OF MUNICIPAL TERRITORY FROM THE CITY OF ADA
Discussed
 1977 OK 164, 569 P.2d 974, THOMAS v. CUMBERLAND OPERATING CO.
Discussed
 1977 OK 191, 571 P.2d 831, HAMES v. ANDERSON
Discussed
 1977 OK 242, 574 P.2d 609, WEAVER v. LAUB
Discussed
 2016 OK 4, 368 P.3d 771, IN THE MATTER OF M.K.T.
Discussed
 2016 OK 20, 373 P.3d 1057, TORRES v. SEABOARD FOODS, LLC
Discussed at Length
 2016 OK 41, 369 P.3d 1079, MAXWELL v. SPRINT PCS
Discussed
 1978 OK 78, 583 P.2d 496, DILL v. RADER
Discussed
 2016 OK 97, 381 P.3d 736, LEE v. BUENO
Discussed at Length
 2016 OK 102, 386 P.3d 1027, C&H POWER LINE CONSTRUCTION CO. v. ENTERPRISE PRODUCTS OPERATING, LLC
Discussed
 2016 OK 108, 388 P.3d 699, SCOTT v. PETERS
Discussed
 2017 OK 7, 390 P.3d 707, ANAGNOST v. TOMECEK
Discussed at Length
 2017 OK 57, 398 P.3d 11, HENSLEY v. STATE FARM FIRE AND CASUALTY CO.
Discussed
 2017 OK 58, 398 P.3d 323, IN THE MATTER OF B.K.
Discussed
 1979 OK 144, 604 P.2d 849, OLD ALBANY ESTATES v. HIGHLAND CARPET MILLS
Discussed
 2017 OK 68, 404 P.3d 829, YOUNG v. STATION 27, INC.
Discussed
 2017 OK 72, 404 P.3d 863, GRAHAM v. D & K OILFIELD SERVICES
Discussed
 2017 OK 69, 404 P.3d 843, GRISHAM v. CITY OF OKLAHOMA CITY
Discussed
 2017 OK 78, 404 P.3d 44, GIBBY v. HOBBY LOBBY STORES INC.
Discussed at Length
 2017 OK 81, 405 P.3d 681, JOHN v. SAINT FRANCIS HOSPITAL
Discussed at Length
 2017 OK 100, 408 P.3d 599, HUNSUCKER v. FALLIN
Discussed at Length
 2018 OK 1, 419 P.3d 204, IN THE MATTER OF THE ADOPTION OF M.A.S.
Discussed at Length
 2018 OK 12, 412 P.3d 1151, GAASCH v. ST. PAUL FIRE AND MARINE INSURANCE CO.
Discussed
 2018 OK 18, 414 P.3d 835, RIDINGS v. MAZE
Cited
 2018 OK 27, 416 P.3d 1061, BERRY AND BERRY ACQUISITIONS v. BFN PROPERTIES
Discussed
 2018 OK 53, 421 P.3d 306, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. KRUGER
Discussed
 2018 OK 100, 436 P.3d 14, BRAITSCH v. CITY OF TULSA
Discussed
 1953 OK 399, 258 P.2d 1178, KOHLER v. CAMPBELL
Discussed
 1980 OK 179, 620 P.2d 899, Lynn v. Shaw
Discussed
 2000 OK 41, 5 P.3d 594, 71 OBJ 1292, Grant v. Goodyear Tire & Rubber Co.
Discussed
 1982 OK 26, 646 P.2d 601, Moses v. Hoebel
Discussed
 1951 OK 11, 229 P.2d 560, 204 Okla. 339, DENCO BUS LINES Inc. v. HARGIS
Discussed at Length
 1951 OK 310, 237 P.2d 903, 205 Okla. 311, In re FLYNN'S ESTATE
Discussed
 1998 OK 95, 968 P.2d 1219, 69 OBJ 3364, Hoar v. Aetna Casualty and Surety Co.
Discussed
 1999 OK 41, 982 P.2d 1071, 70 OBJ 1551, Neer v. State ex rel. Oklahoma Tax Commission
Discussed
 1999 OK 53, 986 P.2d 1130, 70 OBJ 1820, State ex rel. Macy v. Board of County Commissioners
Discussed at Length
 1901 OK 28, 65 P. 940, 11 Okla. 56, BOYD v. BRYAN
Discussed
 2000 OK 68, 12 P.3d 452, 71 OBJ 2366, RIVAS v. PARKLAND MANOR
Discussed
 1911 OK 68, 114 P. 333, 28 Okla. 275, CHICKASHA COTTON OIL CO. v. LAMB & TYNER
Discussed
 1911 OK 90, 114 P. 622, 28 Okla. 425, FRICK-REID SUPPLY CO. v. AGGERS
Discussed
 1983 OK 82, 672 P.2d 1153, Vanderpool v. State
Discussed
 1984 OK 80, 692 P.2d 1364, 55 OBJ 2392, Trinity Broadcasting Corp. v. Leeco Oil Co.
Discussed
 1985 OK 16, 697 P.2d 525, Hughes Drilling Co. v. Crawford
Discussed
 1985 OK 22, 697 P.2d 539, Hammons v. Muskogee Medical Center Authority
Discussed
 1985 OK 71, 708 P.2d 1064, Dodson v. Henderson Properties, Inc.
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 3009.1, Admissibility of Medical Expenses
Discussed at Length
 12 O.S. 314, Repealed
Cited
 12 O.S. 587, General or Special Verdict
Cited
 12 O.S. 702, Repealed
Cited
 12 O.S. 1053, Wrongful Death - Limitation of Actions - Damages
Discussed
Title 23. Damages
 Cite
Name
Level

 23 O.S. 61.2, Limitations on Damages for Bodily Injury - Exceptions - Content of General Verdict and Interrogatories - Jury Instructions
Discussed at Length
 23 O.S. 9.1, Damages for Sake of Example and Punishment of Defendant - Punitive Damages Awards by Jury
Discussed
 23 O.S. 61, Breach of Obligation not Arising from Contract - Measure of Damages
Cited
Title 32. Husband and Wife
 Cite
Name
Level

 32 O.S. 15, Renumbered as 43 O.S. § 214 by Laws 1989, SB 121, c. 333, § 2, eff. November 1, 1989
Cited
Title 36. Insurance
 Cite
Name
Level

 36 O.S. 3636, Uninsured Motorist Coverage
Cited
Title 43. Marriage
 Cite
Name
Level

 43 O.S. 214, Legal Rights of Married Women
Cited
Title 47. Motor Vehicles
 Cite
Name
Level

 47 O.S. 7-116, Limitation on Recovery if Not in Compliance with Compulsory Insurance Law - Exceptions to Limit - Who May Assert Limit
Discussed
Title 51. Officers
 Cite
Name
Level

 51 O.S. 156, Claims - Petition - Limitation of Actions - Notice - Wrongful Death
Discussed
 51 O.S. 151, Short Title
Cited
Title 70. Schools
 Cite
Name
Level

 70 O.S. 4313, Liability Insurance for Employees of Various Institutions - Payment of Premiums
Discussed
Title 75. Statutes and Reports
 Cite
Name
Level

 75 O.S. 11a, Observance of Rules in Construction of Statutes
Cited

 1989 WA 40, 771 P.2d 711, 112 Wash.2d 636, Sofie v. Fibreboard Corp.
Cited
 1989 WA 227, 780 P.2d 260, Sofie v. Fibreboard Corp.
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA